**In the Matter of Attorney Arthur Lyle ROBSON.**

No. 3448.

Supreme Court of Alaska.

Feb. 24, 1978.

Jonathan H. Link, Fairbanks, for Arthur Lyle Robson.

William W. Garrison, Anchorage, Bar Counsel, for Alaska Bar Ass'n.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

On September 29, 1977, the Board of Governors, acting as the Disciplinary Board of the Alaska Bar Association, recommended to this court that Arthur Lyle Robson be suspended from the practice of law for a period of three years.[1] After hearing oral

1. Alaska Bar Rule II–13 provides in part for the Board of Governors to serve as "The Disciplinary Board of the Alaska Bar Association." The Disciplinary Board may appoint hearing committees and assign formal charges to such committees, subject to review by the Board. In cases where disbarment, suspension or public censure is recommended by the hearing committee, the Disciplinary Board reviews the record, findings and recommendations. It then prepares and forwards its own conclusions and recommendations to the Supreme Court, which reviews them on the basis of the record and

argument and reviewing the record and briefs, we found that Robson has been convicted of aiding and abetting receipt of ammunition by a convicted felon in violation of 18 U.S.C. § 922(h) and § 2, and that such offense constitutes a "serious crime," a felony under the federal law committed in the State of Alaska. We further found Robson in contempt of this court's order of June 2, 1977, temporarily suspending him from practice of law. On November 7, 1977, we ordered that Arthur Lyle Robson be suspended from the practice of law in Alaska for a period of twelve months from June 2, 1977, and stated that an opinion would follow.

In this opinion, we shall address the following questions raised by Robson:

1. Did the hearing before the Disciplinary Board lack due process because the Executive Director of the Alaska Bar Association, who also serves as Bar Counsel, was present during the Board's deliberations?

2. If the proceedings did violate his due process rights, what remedy should be afforded?

3. Was it proper for the Disciplinary Board to require proof by a preponderance of the evidence rather than by clear and convincing evidence?

4. Was the federal crime for which Robson was convicted a "serious crime" so as to require suspension under the provisions of Bar Rule II–23?

5. Did Robson engage in the practice of law in violation of this court's order of June 2, 1977?

## I

It is admitted by the Alaska Bar Association that Mary LaFollette, its Executive Director, was present during deliberations by the Disciplinary Board. It is contended, however, that she did not act as an advocate or prosecutor either before the hearing committee or the Disciplinary Board and that the matter was prosecuted solely by William W. Garrison as Bar Counsel. In its brief, the Association states that the Executive Director was present during deliberations to advise on procedural matters, should the need arise, and to take notes so that adequate findings of fact and recommendations could be prepared expeditiously.[2]

Bar Rule II–15 provides that the Executive Director, and such assistant attorneys as may from time to time be employed by the Alaska Bar Association, be referred to as "Bar Counsel." Bar Counsel have the power and duty to investigate all matters involving alleged misconduct. They prosecute all disciplinary proceedings before hearing committees, the Disciplinary Board and the court.

It is reasonable to assume that assistant attorneys acting as Bar Counsel work under the general supervision and guidance of the Executive Director and that, at the hearing stages, the Executive Director is aligned with the prosecution.[3]

It is well-settled that a state cannot exclude a person from the practice of law contrary to the due process clause of the fourteenth amendment to the United States Constitution.[4] Since Robson was subject to suspension or disbarment, the disciplinary proceedings must conform to

---

enters an appropriate order disposing of the proceeding.

**2.** Robson had requested that the hearing be held promptly.

**3.** The court considered a remand for a hearing on the role of the Executive Director in the prosecution of this matter and the nature of her participation, if any, during the deliberations of the Disciplinary Board. Since, regardless of the specific nature of her participation, we believe that there is a fatal appearance of lack of

impartiality, we decided to forego such a hearing in order to conclude this matter expeditiously.

**4.** *Schware v. Board of Bar Examiners,* 353 U.S. 232, 247, 77 S.Ct. 752, 760, 1 L.Ed.2d 796, 806 (1957). The fourteenth amendment provides in part:

.  .  .  nor shall any state deprive any person of life, liberty, or property, without due process of law  .  .  ..

the requirements of due process under both the federal and Alaska [5] constitutions.

An impartial tribunal is basic to a guarantee of due process.[6] In *K & L Distributors, Inc. v. Murkowski,* 486 P.2d 351, 357 (Alaska 1971), we held that the scope of review to assure due process must include a "review to assure that the trier of fact was an impartial tribunal."

The Association correctly points out that we have upheld the inclusion of investigative and adjudicative functions within one agency. In *In re Hanson,* 532 P.2d at 306, we approved procedures of the Commission on Judicial Qualifications which combined investigative and adjudicative functions.[7] With direct reference to the Association's disciplinary procedures, we stated in *In re Cornelius,* 520 P.2d 76, 84 (Alaska 1974): [8]

> The combination of investigative and judicial functions within an agency does not violate due process; a board may make preliminary factual inquiry on its own in order to determine if charges should be filed.

Making such preliminary investigations to determine whether charges should be filed is quite different from participating in the prosecution stage of grievance proceedings. The Bar Rules provide for Bar Counsel, in addition to acting as prosecutor, to investi-

gate complaints and to make recommendations as to dismissal of charges, informal admonitions or prosecution of former charges before hearing committees.[9] Nowhere do the rules authorize Bar Counsel to be present during deliberations of either the hearing committee or the Disciplinary Board.

When an administrative official has participated in the past in any advocacy capacity against the party in question, fundamental fairness is normally held to require that the former advocate take no part in rendering the decision.[10] The purpose of this due process requirement is to prevent a person with probable partiality from influencing the other decision-makers.

The United States Court of Appeals for the Second Circuit recently noted that it is desirable that administrative hearings be clothed with not only every element of fairness but with the "very appearance of complete fairness as well." *Simard v. Board of Education of Town of Groton,* 473 F.2d 988, 993 (2d Cir. 1973), *quoting, Amos Treat & Co. v. S. E. C.,* 113 U.S.App.D.C. 100, 107, 306 F.2d 260, 267 (1962).[11]

We are aware of a surprisingly scant number of cases in which a lawyer, acting as prosecutor, or associated with the prose-

---

5. Art. I, § 7 provides:
   *Due Process.* No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.
   In *In re Hanson,* 532 P.2d 303, 305 (Alaska 1975), we held that a judge's interest in continuing in office is of sufficient importance to warrant such constitutional protection.

6. *McGinnis v. Stevens,* 543 P.2d 1221, 1228 (Alaska 1975).

7. *See also, United States v. Litton Industries, Inc.,* 462 F.2d 14, 16–17 (9th Cir. 1972).

8. *Reh.,* 521 P.2d 497 (1974).

9. Bar Rule II–16(a).

10. *See American Cyanamid Co. v. F. T. C.,* 363 F.2d 757, 767 (6th Cir. 1966), *appeal after remand, Charles Pfizer & Co. v. F. T. C.,* 401 F.2d 574 (6th Cir. 1968), *cert. denied,* 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969); *Trans*

*World Airlines v. Civil Aeronautics Board,* 102 U.S.App.D.C. 391, 392, 254 F.2d 90, 91 (1958).

11. The *Simard* court found that a teacher's dismissal, requiring the approval of school board members with whom he had clashed as a union representative, did not violate the impartiality of the board absent a showing of actual, rather than potential, bias. This requirement that the bias be demonstrated was also stated in *Klinge v. Lutheran Charities Ass'n of St. Louis,* 523 F.2d 56, 62–63 (8th Cir. 1975). There, the United States Court of Appeals for the Eighth Circuit found that the fact that the hospital's lawyer had acted as the presiding officer at a hearing on the doctor's right to continue hospital practice did not violate his right to due process in that the attorney acted merely as a parlimentarian. There was no indication, however, that the attorney was associated with the prosecution of the case against the doctor. Similarly, in *Simard,* the school board members did not have the role of prosecutors.

cution in an administrative hearing, has also been present during deliberations of an adjudicative body. In *Stein v. Mutuel Clerks Guild of Massachusetts, Inc.,* 384 F.Supp. 444 (D.Mass.1974), union members brought suit against the union under the Landrum-Griffin Act alleging that the union had violated the due process rights of members in disciplinary proceedings. The Guild business agent who acted as prosecutor in the disciplinary hearings also sat with the Executive Committee, which heard the matter, during its deliberations. The attorney was not only present but took an active part in the deliberations. The court stated:

> While lay proceedings cannot be held to the due process standards required in a court of law, it offends notions of fundamental fairness to have the prosecutor present and taking an active part in the deliberations of any fact-finding tribunal. Regardless of how limited his role or how noble his purpose, such a practice permits the possibility of a prosecutor characterizing the evidence presented, or substituting his recollection for that of the hearing officers. It goes without saying that a prosecutor with less than noble motives might subvert such a practice into an occasion for presenting additional evidence, without there being any opportunity for rebuttal by those involved. Finally, but not at all unimportant, is that anyone subject to such a practice could hardly be blamed for doubting that he had been treated fairly and impartially. What Mr. Arena actually said during those deliberations is not crucial. What is crucial is that he was in fact present and participated in those deliberations. By permitting such a practice, the defendant deprived the plaintiffs of their right to a full and fair hearing.[12]

There is no indication in the case before us that the Executive Director took an active part in the deliberations of the Disciplinary Board, and we have no question but that the purposes of her attendance were entirely ethical. The Association in its brief states that:

> Although the Executive Director was present during the deliberations to advise on procedural matters, should the need arise, her primary function was to take sufficient notes from which adequate findings of fact and recommendations could be prepared in the shortest amount of time.

The determination of findings and recommendations are the essence of the judicial function of the Disciplinary Board. The preferable method of handling those tasks is for the Board to reach its decision after deliberations held without the presence of counsel associated with either side. As in a court case, the Board may then indicate to both sides its general findings and recommendations and, if it so desires, request one of the participating attorneys to prepare a draft thereof.

■ We hold that to assure both the fact and appearance of impartiality in the Disciplinary Board's decisional function, counsel associated with either the prosecution or defense should not be present during deliberations.

## II

■ Having decided that the proceedings violated due process as to the fact or appearance of impartiality during the deliberations of the Disciplinary Board, we are next confronted with the question of the appropriate remedy. A majority of the court has decided to disregard the findings and recommendations of the Disciplinary Board and to proceed on the findings and recommendations of the hearing committee.[13]

The United States District Court for the District of Columbia reached a similar deci-

---

**12.** 384 F.Supp. at 448–49 (footnote and citation omitted).

**13.** Boochever, Chief Justice, and Rabinowitz, Justice, dissent from this procedure and would afford Robson the opportunity of a hearing before a board to be appointed by the court, which hearing could be waived without prejudice as to any further proceedings that Robson might wish to take in federal court.

sion under analagous circumstances in *Koniag, Inc. v. Kleppe,* 405 F.Supp. 1360 (D.D. C.1975). The case involved procedures whereby certain Native villages could establish entitlement to the right to select lands under the Alaska Native Claims Settlement Act. The Secretary of the Interior established the procedures.

The complicated appeal process involved in that case included an initial hearing before the Juneau, Alaska, Area Director of the Bureau of Indian Affairs. Protesting villages received a de novo adversary hearing before administrative law judges. The decisions of the judges were forwarded, *in camera,* to the Ad Hoc Board,[14] without being served on the villages. The Ad Hoc Board then made formal decisions which were forwarded to the Secretary, *in camera,* without service on the villages. The Secretary consulted with members of his staff and decided to accept the Ad Hoc Board's decision in each case. Only at this stage were the villages advised of the result.

The United States District Court held that, by foreclosing the villages from presenting their contentions to the Secretary, due process was violated. The appellate proceedings were invalidated and set aside, and the court had to decide whether to remand to the Department of Interior for further proceedings.

The court also found an impermissible interference in the Secretary's decisional function by Congressional hearings which adversely affected the appearance of impartiality. Because of doubt that the effect of the Congressional hearings could be eliminated and the need for a prompt resolution and settlement of the Native Claims, the court decided against a remand, stating:

> . . . this is not a question of, in effect, removing the administrative body altogether from decision making, since there is an untainted decision by the Secretary's delegate, the Bureau of Indian Affairs Area Director, which can be rein-

stated. Recognizing that the Government has a particular responsibility to the Natives at least of a quasi-trust character . . . and considering all of these factors, the Court will not remand but will in all cases reinstate the decision of the Area Director.[15]

We are confronted with similar considerations. If the Disciplinary Board members were in any manner influenced by the presence of the Executive Director, there is no way that we can assure the removal of such an effect from their findings. We have available, however, an untainted decision of the hearing committee. Moreover, lengthy delays could be prejudicial in that Robson was under a temporary suspension from practice pending resolution of the disciplinary proceeding. A majority of this court therefore has decided to proceed on the findings and recommendations of the hearing committee.

### III

It is contended that an improper standard of proof was applied in the disciplinary hearings. Bar Rule II–16(b) provides in part:

> Bar Counsel shall have the burden at such hearings of demonstrating by the preponderance of the evidence that the respondent-attorney has, by act or omission, violated the Code of Professional Responsibility of the American Bar Association.

Robson argues that, instead of a preponderance of evidence standard, a "clear and convincing" evidence standard should have been applied. In *In re Hanson,*[16] we held that the "clear and convincing" test should apply in judicial disciplinary proceedings before the Commission on Judicial Qualifications. In that case, however, no rule had been promulgated establishing a different standard.

The Alaska Bar Rules were proposed by the Bar Association, and a final draft was

---

**14.** This Ad Hoc Board is presently denominated the Alaska Native Claims Appeal Board.

**15.** 405 F.Supp. at 1373 (citations omitted).

**16.** *Supra,* Note 5 at 308.

adopted by this court. Robson does not argue that the "preponderance of evidence" standard violates due process and cites no authority so holding. We note that the standard has been expressly approved in a number of other jurisdictions.[17] We hold that it was not error to apply the standard set forth in the rule.

## IV

◼ Bar Rule II–23 provides for the suspension from practice of an attorney convicted of a serious crime, pending final disposition of a disciplinary proceeding. The term "serious crime" is defined, in part, as including any crime "which is or would be a felony in the State of Alaska." Robson was convicted in the United States District Court, District of Alaska, for the federal crime of aiding and abetting a convicted felon and mental defective in receiving ammunition in violation of 18 U.S.C. § 922(h) and § 2.[18]

With reference to the offense, the hearing committee found:

. . . that Respondent, as prior counsel for Arthur Post, was aware that he [Post] was a convicted felon and a mental defective; that there was at least question as to whether it was legal for Post to possess the items furnished by Respondent; that Respondent purchased the primers for Post with Post's money and immediately turned the primers over to Post upon purchase; and that Respon-

dent had knowledge that Post possessed several firearms.

The findings are supported by the evidence.

Since Alaska does not have a statute which specifically prohibits furnishing ammunition to a convicted felon, counsel contends that the offense here involved does not constitute a "serious crime." He argues that it is not a felony under Alaska law. The Bar Rule, however, does not define "serious crime" as being limited to those proscribed as felonies under Alaska law. The definitional language includes any crime "which is or would be a felony in the State of Alaska." A crime which is a felony under federal law, if committed in Alaska, literally is "a felony in the State of Alaska."

When the nature of the penalties are considered, we do not believe that such a literal construction is overly harsh or contrary to the intention of the rule. One convicted of a serious crime is suspended from practice pending final disposition of disciplinary proceedings. The court refers the matter to the Board for the institution of a formal proceeding before a hearing committee to determine the extent of the final discipline to be imposed.[19] Bar Rule II–12 specifies:

*Types of Discipline.*

Misconduct shall be grounds for:

(a) Disbarment by the Court; or

(b) Suspension by the Court for a period not exceeding five (5) years; or

(c) Public censure by the Court; or

---

**17.** *See* 105 A.L.R. 984, 985; *see also, In re Posler,* 390 Mich. 581, 213 N.W.2d 133 (1973).

**18.** 18 U.S.C. § 922(h) provides:

It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 2 provides:

*Principals*

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**19.** Bar Rule II–23(d).

(d) Private reprimand by the Disciplinary Board; or

(e) Private informal admonition by Bar Counsel.

After receipt of the recommendation of the hearing committee, the Disciplinary Board determines whether the matter should be concluded by disbarment, suspension or public censure. If so, it submits its recommendation in writing to this court which, after reviewing the briefs and record on hearing and argument, if requested, shall enter an appropriate order. If private reprimand or private informal admonition is selected, the discipline is handled directly by the Board.[20] Thus, the consequences may be light or severe, depending upon the nature of the particular offense involved.

In this particular case, our decision is further bolstered by the fact that Alaska does have a statute making it a felony for certain convicted felons to own, possess or control a concealable weapon, AS 11.55.-030.[21] Furthermore, AS 12.15.010 abolishes the distinction between accessories before the fact and principals and makes persons who aid or abet in the commission of a crime punishable as principals in much the same manner as 18 U.S.C. § 2.[22] While the Alaska statute on possession of weapons does not expressly include ammunition, it is logical that, if the legislature disapproves aiding of certain felons in the possession of concealable firearms, such purpose encompasses the furnishing of ammunition, a necessary ingredient to render the weapons lethal. Thus, Alaska does provide for punishment as a felony for a crime at least closely akin to, if not including, the offense committed by Robson.

Robson, as prior counsel for Post, was aware that Post was a convicted felon and a mental defective. Although we believe that Robson was motivated by an intent to aid Post in maintaining an otherwise lawful means of existence as a trapper, rather than to assist him in some criminal endeavor, the conduct at best showed shockingly poor judgment. It further indicated a disregard of the law at least to the extent of failing to ascertain for certain whether the conduct was prohibited. Robson was put on notice that Post could not legally obtain the primers, as, otherwise, there was no reason why the latter, who was in the store at the time of purchase, could not have obtained them himself.

We hold that the crime for which Robson was convicted does constitute a "serious crime" under the provisions of the bar rule.

## V

█ In accordance with an agreement of counsel, it was determined that the hearing committee would consider, in its determination, Robson's conduct subsequent to his suspension from the practice of law by order of this court dated June 2, 1977, including any unauthorized practice. The committee did not pass on the question of whether Robson's subsequent actions consti-

---

20. Bar Rule II–16(c).

21. AS 11.55.030 specifies:

   *Possession by convicts.* (a) A person who has been convicted of a felony, or assault with a dangerous weapon, burglary, robbery, and like crimes, by a court in this state, or by the courts of the United States or of another state or territory, may not own or have in his possession or under his custody or control a pistol, revolver, or other firearm capable of being concealed about his person, or carry concealed about his person a knife with a blade over two inches long or a dirk or dagger, slingshot, metal knuckles, or an instrument commonly considered to be a weapon.
   (b) The provisions of (a) of this section do not apply to a person who has received a pardon for the prior conviction upon which

this action is based or, in the case of a felony, when the final termination of the sentence, including any probationary period, was more than 10 years before the time of ownership, possession or control of a weapon as specified in (a) of this section.

22. *See* Note 18, *supra.* AS 12.15.010 provides:

   *Abrogation of distinctions between accessories and principals.* The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals.

tuted the practice of law but did find that his conduct was improper in giving the appearance of the practice of law.

This court ordered Robson to show cause why he should not be held in contempt of court for violating the order of this court suspending him from the practice of law. In response, Robson contended that his conduct after his suspension did not constitute the practice of law in that he was merely acting as a business agent for the Plumbers and Pipefitters Union.

Based on the undisputed evidence presented at the disciplinary hearing, the principal questioned acts of Robson consist of the following:

1. Robson accepted employment with the Plumbers and Pipefitters Union. As part of the employment for which he was paid, he gave advice regarding the establishment of a pre-paid legal services plan in compliance with the Employer's Retirement Income Security Act. He completed and filed the Department of Labor and Internal Revenue Service forms necessary to obtain approval of the plan.

2. On July 29, 1977, he signed a letter to another attorney with the words "attorney at law" typed beneath his signature. The letter concerned the claimed wrongful discharge of Raymond Medlin.

3. On August 1, 1977, at an arraignment in superior court in Fairbanks, Robson, on three different occasions, permitted Phillip Timbrook to refer to him as his attorney, without making any clarifying comments.[23] Robson admitted being present at the arraignment and having conferred with Timbrook during the session.

4. Robson wrote a letter on behalf of Paul Sleppy, a member of the Plumber's Union, regarding a dispute over whether Sleppy was eligible for pre-paid legal services.

5. Robson edited and typed the August 10, 1977, edition of the "Pipewrench Nugget Breezes," a newsletter circulated among the membership of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry Local No. 375. One story stated:

The other new staff member is our attorney, Art Robson. Most of you will remember Art as District Court Judge for the last eight years. "Robbie" will divide his time between legal work for Local # 375, and any problems you members may have. Our new pre-paid legal plan covers lawyer's services, so if you think you may need a mouthpiece see myself or J.C.

Leonard Arsenault, the Union Business Manager, testified that he wrote the article. There was in the record before the committee no evidence of any retraction of the statement.

Robson claimed that he was serving as union business agent, not attorney; that the typing of "attorney at law" was due to a secretarial oversight which he failed to observe and that he did not correct allusions made in court that he was attorney for a defendant because of his knowledge that the presiding judge was well aware of his suspension.

Although AS 08.08.080(b)(1), enacted in 1976, authorizes the Board of Governors of

23. In the first instance:
THE COURT: Now, can you tell me at this time whether you would like to confer with a lawyer?
MR. TIMBROOK: I've already conferred with a lawyer, Mr. Robson, who represents Local 375, and at this time, I would like to plead no contest to the destruction of property, and not guilty of the joyriding.
In the second instance:
MR. TIMBROOK: Could I please speak with . . . with my lawyer for a minute?
THE COURT: Sure.
MR. TIMBROOK: I believe Mr. Robson is right back there.

THE COURT: Sure, sir.
In the third instance:
THE COURT: Is that clear?
MR. DOVE: Yes sir.
THE COURT: Okay. And he can authorize his attorney to do anything for him.
(Pause)
THE COURT: And that may be by agreement that any portion of the bail can be used to make restitution so the court can consider that at the time of sentencing, and so that'd be done in advance. That's generally prudent.
You can talk to your attorney about that.
MR. TIMBROOK: Yes, sir.

the Alaska Bar Association to approve and recommend to the state supreme court for adoption rules defining the practice of law, to date no such recommendation has been received. There is no rule defining the practice of law. Nor is there a statute defining the term except in the context of the requirements of active practice of law as a qualification for justices. For that purpose, the active practice of law is defined in AS 22.05.070 as:

(1) sitting as a judge in a state or territorial court;

(2) being actually engaged in advising and representing clients in matters of law;

(3) rendering legal services to an agency, branch, or department of a civil government within the United States or a state or territory of the United States, in an elective, appointive or employed capacity;

(4) serving as a professor, associate professor, or assistant professor in a law school accredited by the American Bar Association.

In *Application of Babcock,* 387 P.2d 694 (Alaska 1963), the court was faced with the problem of defining "active practice of law" for purposes of AS 08.08.140, which formerly permitted a person who met certain qualifications to be admitted to the state bar without taking the bar exam.

The court looked to Black's Law Dictionary which defines "practice of law" as:
Not limited to appearing in court, or advising and assisting in the conduct of litigation, but embracing the preparation of pleadings, and other papers . . . and the giving of all legal advice to clients. . . . It embraces all advice to clients and all actions taken for them in matters connected with the law. (citations omitted) [24]

The court found that, because a person in the military service could not be employed by clients and did not actually practice the business or profession of law, such "practice" did not meet the statutory requirement of "active practice of law."

Subsequently, the legislature amended the Alaska Integrated Bar Act by defining the active practice of law to include:
[R]endering legal services to an agency, branch, or department of a civil government in the United States or a state or territory of the United States, in an elective, appointive or employed capacity . . . .[25]

After passage of this Act, Babcock was admitted to practice. Subsequently, in *Application of Payne,* 430 P.2d 566 (Alaska 1967), employment by the United States Corps of Engineers was held to be active practice of law under that statutory definition. We held that a reasonable construction of AS 08.08.245(3) required that an applicant have devoted a substantial portion of his time and energies to the rendering of legal services (extensive in scope) in his employed capacity to the government agency. Payne was held to be eligible for admission by reciprocity. AS 08.08.245, however, was repealed in 1967.[26]

The Unauthorized Practice Handbook [27] sets forth a compendium of the rules and statutes defining practice of law. Various jurisdictions have held all or some of the following activities to constitute practice of law:

A.  Representation of client [28]

B.  Giving legal advice [29]

the practice of law or represent himself as entitled to engage in the practice of law as that term is defined in the Alaska Bar Rules.

**24.** 387 P.2d at 697.

**25.** AS 08.08.245(3).

**26.** AS 08.08.210(a) prohibits the practice of law by one not licensed and an active member of the Alaska Bar. Subsection (b) states that "The practice of law shall be defined in the Alaska Bar Rules." Also, AS 08.08.230 makes it a misdemeanor for anyone not an active member of the Alaska Bar Association and not licensed to practice law in Alaska to engage in

**27.** Fischer and Lachmann (American Bar Foundation, Chicago 1972).

**28.** *Id.* at 73.

**29.** *Id.* at 74.

C. Preparation of legal instruments [30]
D. Holding oneself out as qualified to practice law [31]
E. Aiding and abetting the unauthorized practice of law [32]

The practice of law may well be used in a different sense for various purposes. Thus, it has been defined by Alaska statute for the qualifications of justices, but this definition is not necessarily the same as that to be used in determining whether attorneys seeking admission to the bar have had the requisite practice or whether certain activities constitute the unauthorized practice of law.

Similarly, different criteria may well be applicable for one suspended from the practice of law. It seems readily apparent that, because of prior recognition as an attorney, such a person must be particularly prudent in avoiding the appearance of holding himself out as a lawyer.

This distinction between one who has been a practicing attorney and one who has not is illustrated by the case of *State v. Butterfield*, 172 Neb. 645, 111 N.W.2d 543 (1961). An attorney who was suspended from practice drew deeds, mortgages and releases. He made out income tax returns and advertised his availability for such work. On one occasion, he drafted a will and supervised its execution; and on another, he drafted a power of attorney.

He contended that the acts were performed in his capacity as a licensed real estate broker, notary public, abstracter and loan agent, rather than as an attorney. The court held:

It seems clear to us that the doing of such work is within the province of a lawyer to do. It is properly identified as the practice of law, whether or not it might under some circumstances be properly performed by others not admitted to the bar.

30. *Id.*

31. *Id.* at 79–84.

32. *Id.* at 84–85.

33. 111 N.W.2d at 546–47.

An order of suspension deprives the suspended lawyer from performing any service recognized as the practice of law and which is usually performed by lawyers in the active practice of law. It is the contention of respondent that these services were performed in his capacity as a licensed real estate broker, notary public, abstracter, and loan agent. It is not necessary for us to determine in this case if and under what circumstances others might perform such services, although not admitted to the bar. . . . A suspended lawyer will not be heard to say that services recognized as within the practice of law were performed in some other capacity when he is called to account.[33]

Here, it appears that Robson held himself out as a lawyer, performed legal services and gave legal advice in setting up a prepaid legal services plan, completing and filing necessary forms. He signed a letter of the type usually written by an attorney with "attorney at law" printed aside his name; permitted a person to refer to him in court as his attorney without making any clarifying comments and typed and edited a newsletter indicating his availability to serve as attorney for a union and its members. The cumulative effect of these activities leads us to the inescapable conclusion that he was engaged in the practice of law in violation of our order of June 2, 1977.[34]

CONCLUSION

We have concluded that the hearing before the Disciplinary Board of the Alaska Bar Association violated due process rights in that the Executive Director who, under Bar Rule II–15, is designated as Bar Counsel and thus is charged with prosecutorial duties in disciplinary proceedings, was present during the Board's deliberations.

34. We have not endeavored in this opinion to give a specific definition of the term "practice of law," since we understand that the Board of Governors of the Alaska Bar Association is presently preparing such a definition which will be submitted to the court for inclusion in the Bar Rules.

As a result, the Board's findings and recommendations are disregarded, and we proceed on those of the hearing committee. We find no error in the preponderance of evidence standard of proof provided for in the Bar Rules. We hold that Arthur Lyle Robson was found guilty of a serious crime as defined in Bar Rule II–23. We also find him in contempt of this court's order of June 2, 1977, suspending him from the practice of law.

In determining the sanction to be imposed, we have given serious consideration to the recommendation of the hearing committee that Arthur Lyle Robson be suspended from the practice of law for a period of one year commencing June 2, 1977, the date of our order suspending him from practice. Additionally, we have given consideration to the punishment imposed on him for the criminal conviction by the United States District Court [35] and the specific nature of the crime committed. We are convinced that Robson was motivated by a genuine, if misguided, effort to help rehabilitate Post. We are also mindful of Robson's various explanations pertaining to his practice of law while suspended. Considering all of those factors, a majority of the court has decided to follow the recommendation of the hearing committee [36] and suspend Arthur Lyle Robson from the practice of law for a one-year period commencing June 2, 1977, the date of our prior order temporarily suspending him from practice.[37]

35. The United States District Court suspended imposition of sentence and placed Robson on probation for a period of four years on various conditions, including that Robson obtain such medical treatment as be directed by the Probation Department and that he pay a fine of $2,500.00. The court further ordered that Robson pay to the United States the costs of prosecution in an amount not known exactly but, according to testimony of Robson, somewhere between $5,500.00 and $8,500.00. Respondent is apparently complying with all of the terms.

36. Justices Matthews and Burke dissent from this portion of our order and would impose a three-year suspension from practice.

37. The court is appreciative of the diligence and care with which the members of both the hearing committee and the Disciplinary Board considered this matter.