Gary STIGALL, Appellant,

v.

ANCHORAGE MUNICIPALITY POLICE AND FIRE RETIREMENT BOARD, Appellee.

No. S-693.

Supreme Court of Alaska.

May 2, 1986.

Ernest Z. Rehbock, Rehbock and Rehbock, Anchorage, for appellant.

Julie Garfield, Asst. Mun. Atty., Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### INTRODUCTION

Appellant Gary Stigall was hired as a firefighter by the Greater Anchorage Area Borough in December, 1971. Prior to his employment as a firefighter, Stigall had suffered a hearing loss while serving in the military. He received a permanent disability benefit for his injury. Stigall's hearing ability neither worsened nor improved during his tenure as a firefighter. His job performance was consistently rated as good to excellent throughout his tenure.

Stigall filed a claim for permanent nonoccupational disability benefits in November, 1980.[1] He claimed that changed cir-

---

1. AMC 3.85.040 provided for nonoccupational disability benefits to be paid when an employee had accumulated five years of service prior to the date of disability, was unable to perform his

cumstances in his working conditions made his previously acceptable hearing loss a disability which prevented him from properly performing his job.

Stigall's case was heard by appellee, the Anchorage Municipality Police and Fire Retirement Board (the board), appealed to the superior court and then remanded to the board, on the ground that the tape-recording of the first board hearing was unusable. On remand, the board denied his claim. The superior court affirmed the board's decision. Stigall now appeals.

## I. WAS STIGALL AFFORDED DUE PROCESS IN HIS HEARING BEFORE THE BOARD?

### A. *Julie Garfield's Appearance as Counsel.*

Julie Garfield is an assistant municipal attorney for Anchorage. She has represented the board throughout this case. She also acted as advisor to the board in its initial administrative determination of Stigall's claim for permanent non-occupational disability benefits.

Stigall had left Alaska for Kentucky after the initial hearing of his case and did not wish to return to Alaska to participate in the rehearing because of the expense involved. Counsel stipulated that Stigall's testimony could be presented in the form of written interrogatories and responses.[2]

The stipulation specifically stated that "Anchorage's counsel shall submit a list of cross-examination questions to Stigall's counsel" and that Stigall's counsel would then send the questions in a sealed en-

velope to Kentucky, where Stigall would be deposed by a mutually approved officer. Julie Garfield prepared the interrogatories that were sent to Stigall.

Stigall alleges that Garfield acted both as an advocate adverse to his position and as an advisor to the board. He argues that Garfield's acting in these dual roles was improper and deprived him of due process before the board.

It is undisputed that an attorney may not act as an advocate before an administrative agency and also participate in the agency's deliberations. *Matter of Robson,* 575 P.2d 771, 774 (Alaska 1978). In *Robson,* the executive director of the Alaska Bar Association (ABA), who also served as bar counsel, was present during the deliberations of the disciplinary board of the ABA.[3] We held that "to assure both the fact and appearance of impartiality in the Disciplinary Board's decisional function, counsel associated with either the prosecution or defense should not be present during deliberations." [4]

The board argues that Stigall's *Robson* specification of error fails for three separate reasons. First, Stigall failed to challenge below the propriety of Garfield's interrogatories under *Robson.* Stigall only discussed *Robson* in his reply brief to the superior court and then only on the issue of *ex parte* contacts, which he subsequently abandoned, and not on the issue of Garfield's potentially conflicting role. Thus, the board contends, Stigall is barred from raising this issue now.[5]

assigned duties, and the date of disability occurred after February 29, 1972. This section has been renumbered AMC 3.85.130 (Supp. # 27 6/30/84).

2. On appeal to the superior court, Stigall argued that use of these interrogatories violated AMC 3.60.065, which bans *ex parte* contacts between members of a quasi-judicial body and appellants, adversely affected parties or members of the public. Stigall has not pursued this argument on appeal to this court.

3. Bar counsel have the power and duty to investigate all matters involving alleged misconduct

and to prosecute all disciplinary proceedings before hearing committees, the disciplinary board and the court. Bar counsel also make recommendations as to the dismissal of charges or prosecution of former charges before hearing committees.

4. *Robson,* 575 P.2d at 775.

5. *See Williams v. Alyeska Pipeline Service Co.,* 650 P.2d 343, 351 (Alaska 1982) (argument not raised before trial court will not be considered on appeal).

Second, the board argues that *Robson* is not applicable to this case. *Robson* prohibits an attorney from simultaneously acting as an advocate and also participating in the administrative agency's deliberations. Here, Garfield only sent written interrogatories to Stigall, which were merely substitutes for questions the board would have asked Stigall itself had he attended the hearing. The board asserts that Garfield was not an advocate, nor did she participate in the board's deliberations.

Third, the board argues that Stigall waived his right to object to Garfield's participation in the deposition process because he stipulated that he would be deposed in the form of written interrogatories by his counsel and "Anchorage's counsel." Moreover, the board argues, the written deposition process was designed to accommodate and convenience Stigall.

■ We agree with the board that Garfield's participation in the administrative proceedings was not impermissible under *Robson*. She did not participate in and was not present during the board's deliberations. Her drafting of interrogatories for the board's use does not present the threat to the fact or appearance of impartiality in the board's function that was present in *Robson*.

### B. *Myers' Testimony.*

Stigall claims that the board's failure to exclude Arthur Myers' testimony violated his due process rights because Myers was a "hostile surprise witness" and because his testimony was "speculative." Stigall objected to Myers' testimony at the hearing on the ground that Myers' name was not supplied to him beforehand. His objections were overruled.

■ Benefit hearing procedures are governed by the Anchorage Code of Municipal Regulations (ACMR) Chapter 3.85, pursuant to former Anchorage Municipal Code (AMC) 3.85.100(E) (renumbered AMC 3.85.-040(G), Supp. # 27 6/30/84).[6] ACMR 3.85.-004(B) provided that a person claiming benefits must provide a "summary of the additional evidence and argument to be presented at the hearing, the name of each witness to be presented and the nature of his testimony."[7] Nothing in ACMR Ch. 3.85. or the AMC requires the board to submit a witness list to the claimant.[8] We hold that these procedural rules in effect at the time of the hearing satisfy due process requirements.[9]

■ Stigall's argument that Myers' testimony was excludable because it was "speculative" is also without merit. The rules of evidence are not strictly applicable to board proceedings and any evidence is admissible if it is relevant and responsible persons would rely on it.[10] It was within the board's province to assign whatever weight it found appropriate to Myers' testimony. We therefore conclude that the board's admission of this evidence was not erroneous and further that its admission did not constitute a denial of due process.

---

**6.** The AMC applies to the extent that the ACMR does not address procedural issues. AMC 3.60.-010.

**7.** This language has since been eliminated (Supp. # 7, 6/30/84).

**8.** In 1984, the ACMR was revised to require both the claimant and the board to exchange witness lists, *see* ACMR 3.85.005(A)(1), but this requirement was not in effect at the time of Stigall's hearing.

**9.** Myers was only one of the board's three witnesses, the two others being Marianne Barbanski and Berle Anderson. Even if Myers' testimony should not have been received by the board, there was more than an adequate basis for the board's decision. *See* discussion, Section II, *infra*.

**10.** ACMR 3.85.006[D] provided:

Relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of a common law or statutory rule which makes improper the admission of the evidence over objection in a civil action. Hearsay evidence may be considered provided there are guarantees of its trustworthiness and that it is more probative on the point for which it is offered than any other evidence which the proponent can procure by reasonable efforts (renumbered 3.85.006[E], Supp. # 7, 6/30/84).

## C. *Stigall's Witnesses.*

Stigall obtained administrative subpoenas for municipal firefighters Edward Dearman and Franklin Fenner, but was unable to serve them prior to the first hearing date. Stigall received a one-week continuance to locate the witnesses, but again failed to produce them.

According to Stigall, when his process server went to serve these witnesses at work, he found that they were "conveniently on vacation." Stigall claims the municipality obstructed his efforts to serve the witnesses because it refused to give either the process server or Stigall's counsel the workers' home addresses or telephone numbers. The board found this explanation to be a "frivolous" excuse, and denied his request that the record be held open for additional testimony.

Stigall does not support his implied allegations that the witnesses were avoiding appearance before the board with the cooperation of the municipality. The board notes that the AMC requires that employees consent before information in their personnel files is disclosed to third persons. AMC 3.90.040(B) and AMC 3.30.016(A)(2). The board also notes that while claimants have the right to subpoena witnesses, AMC 3.60.045(F) and ACMR 3.85.006(F),[11] nothing in the AMC or the ACMR requires Anchorage to insure that its employees comply with subpoenas. The board argues that having already granted one continuance to Stigall, its refusal to grant another continuance was not unreasonable or a violation of Stigall's due process rights.

■ Since nothing in the record reveals what reasonable attempts, if any, Stigall made to contact these witnesses other than by sending subpoenas to their place of employment, we hold that the board did not abuse its discretion by refusing to grant Stigall a second continuance.

## II. WAS THE BOARD'S DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE?

On appeal the superior court affirmed the board's denial of Stigall's disability claim, concluding that there was "ample evidence before the Board to support the Board's conclusion that Stigall was not disabled".[12]

■ Stigall's performance evaluations were uniformly positive. All of his ratings were "good" to "excellent".[13] There is no evidence that Stigall's fellow firefighters ever refused to work with him because of a danger he posed to their safety. Given the presence of ample evidence in the record that Stigall was not unable to perform his duties as a firefighter, we hold that the board's decision that Stigall did not qualify for non-occupational disability benefits was supported by substantial evidence. *See Black v. Universal Services, Inc.*, 627 P.2d 1073, 1075 (Alaska 1981).

## CONCLUSION

Stigall was afforded due process by the board. There is substantial evidence in the record to support the board's determination

---

11. Renumbered 3.85.006[G], Supp. # 7, 6/30/84.

12. AMC 3.85.050 set out the requirements for non-occupational disability benefits:

   A. A member who is *unable to perform his assigned duties* as a result of a disability occurring after February 29, 1972 that is not compensable [as an occupational disability] under Section 3.85.040 of this chapter shall receive [disability benefits].

   .     .     .     .     .

   C. No member is eligible for benefits under this section unless he has five years of credited service prior to the date of disability ... (emphasis added)

(renumbered AMC 3.85.130, Supp. # 27 6/30/84).

13. Stigall claims that his disability arose from technological and administrative changes in the Anchorage Fire Department which gradually made his stable hearing condition unacceptable. He does not allege that his condition worsened.

   The board responds that Stigall failed to show that he was ever "unable to perform his assigned duties" as a result of his hearing loss during his tenure with the Anchorage Fire Department, including the four-month period between his application for benefits and his resignation.

that Stigall did not qualify for disability benefits.

The decision of the superior court affirming the board's denial of Stigall's claim for permanent non-occupational disability benefits is AFFIRMED.