James Henry GREEN, Daniel Garfield Ivy,
Jerry Strong, and Solomon Aaron
Pope, Petitioners,

v.

STATE of Alaska, Respondent.

No. 1177.

Supreme Court of Alaska.

Dec. 22, 1969.

M. Ashley Dickerson, Anchorage, for petitioners.

G. Kent Edwards, Atty. Gen., Juneau, Keith E. Brown and Benjamin O. Walters, Jr., Asst. Dist. Attys., Anchorage, for respondent.

Before DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

## OPINION

DIMOND, Justice.

The Alaska constitution guarantees to an accused in a criminal prosecution the right to a speedy and public trial "by an impartial jury of twelve." [1] The responsibility of selecting persons to serve on juries is vested by law in the presiding superior court judge of each of Alaska's four judicial districts. The selection is made from a list of the names of residents of the district who are qualified by law for jury service. Prior to 1969 this list was made up only of such residents "who voted in the preceding general election." [2] Effective August 3, 1969 the method of selection was changed so as to include, not only those persons who voted in the preceding general election, but also "all persons who purchased a resident hunting or fishing license", and "all residents who filed a state income tax return for the preceding year." [3] Lists of purchasers of resident hunting and fishing licenses and of persons who filed state income tax returns are to be prepared, respectively, by the state Department of Fish and Game and Department of Revenue.[4]

1. Alaska Const. art. I, § 11.

2. AS 09.20.050, prior to the 1969 amendment, provided in part:
 At such times as the presiding judge of the superior court in each judicial district may designate, but not less than once every two years, the clerk of the superior court in each judicial district shall prepare a list of the names of residents of the district who are qualified by law for jury service and who voted in the preceding general election.

3. AS 09.20.050, as amended by SLA 1969, ch. 67, § 1, now provides in part:

 At such times as the presiding judge of the superior court in each judicial district may designate, but not less than once every two years, the clerk of the superior court in each judicial district shall prepare a list of the names of residents of the district who are qualified by law for jury service. The list shall contain the names of all persons who purchased a resident hunting or fishing license, all residents who filed a state income tax return for the preceding year, as well as those persons who voted in the preceding general election.

4. *Id.*

■ Petitioners were indicted for the crime of kidnapping. They claimed that they were entitled to be tried by a jury selected, not only from a voting list, but also from a list of purchasers of resident hunting and fishing licenses and those who had filed state income tax returns, in accordance with the 1969 amendment to AS 09.20.050. When petitioners were informed by the superior court that the jury would be selected only from a voting list and not in accordance with the amended statute, they sought and obtained from a justice of this court a stay of proceedings in the superior court until the question as to the proper method of selection of a jury could be reviewed by this court. That question is of sufficient, general importance to merit review under our discretionary authority to pass upon interlocutory matters, because it touches upon a large area of criminal and civil litigation throughout the state where jury trials are involved.[5]

Petitioners contend that to require them to go to trial without compliance with the 1969 law on jury selection would be to deprive them of equal protection of the laws. The guarantee of equal treatment under the law contained in the federal and state constitutions [6]

* * * is the embodiment of the fundamental principle that all men are equal before the law. It is a prohibition against laws which, in their application, make unjust distinctions between persons.[7]

■ There is no showing of a denial of equal protection in this case. Petitioners were *not singled out* for special treatment. There was no distinction made between the basis for jury selection in petitioners' case and that in all other cases Nor does it appear that utilization of the jury selection method under the old law will have the effect of a systematic exclusion from petitioners' jury of a class of persons of which petitioners are a member.[8] The constitutionally guaranteed right to equal treatment under the law has not been invaded or encroached upon.

■ Petitioners also contend that the constitutional requirement relating to due process is involved in this case. Their position is that if they are convicted of the offenses for which they are indicted by a jury not selected in accordance with the 1969 amendment, they will have been deprived of their liberty without due process of law in violation of the federal and state constitutions.[9]

The term "due process of law" is not susceptible of precise definition [10] or reduction to a mathematical formula.[11] But in the course of judicial decisions it has come to express a basic concept of justice under law, such as "our traditional conception of fair play and substantial jus-

5. Supreme Ct.R. 23–24. Crawford v. State, 408 P.2d 1002, 1003–1004 (Alaska 1965).

6. U.S.Const. amend. XIV provides:

 * * * nor shall any State * * * deny to any person within its jurisdiction the equal protection of the laws.

 Alaska Const. art. I, § 1 provides:
 This constitution is dedicated to the principle that * * * all persons are equal and entitled to equal rights, opportunities, and protection under the law * * *.

7. Leege v. Martin, 379 P.2d 447, 451–452 (Alaska 1963).

8. *See* Crawford v. State, 408 P.2d 1002, 1007 (Alaska 1965).

9. U.S.Const. amend. XIV provides:
 * * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *.
 Alaska Const. art. I, § 7 provides:
 No person shall be deprived of life, liberty, or property, without due process of law.

10. Territory of Alaska v. Craig Enterprises, Inc., 355 P.2d 397, 401, 84 A.L.R. 2d 1082 (Alaska 1960).

11. Gibbs v. Burke, 337 U.S. 773, 781, 69 S.Ct. 1247, 93 L.Ed. 1686, 1691 (1949).

tice",[12] the "protection of the individual from arbitrary action",[13] "fundamental principles of liberty and justice",[14] whether there has been a "[denial of] fundamental fairness, shocking to the universal sense of justice",[15] "that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct",[16] and a "respect for those personal immunities which * * * are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental', * * * or are 'implicit in the concept of ordered liberty.' " [17]

In applying those principles here, we cannot see a deprivation of petitioners' liberty without due process of law. As a protection or barrier against the exercise of arbitrary power, the people of this state, in adopting our constitution, guaranteed to petitioners the right to be tried by "an impartial jury of twelve." [18] This is a fundamental right, recognized as such throughout our nation by the constitutions of all our states and our federal government.[19]

Not only is such a right recognized, but it has been protected against nullification by the improper constitution of juries. A jury under our constitution must be an "impartial" one. This is an expression of the notion of what a proper jury is—a body truly representative of the community. Such a notion is in keeping with our basic, traditional concept of a democratic society and representative government.[20]

It would not be in keeping with that concept if a jury were an "organ of any special group or class" [21]—if prospective jurors were selected under a system where there was a systematic and intentional exclusion of particular economic, social, religious, racial, political or geographical groups in the community.[22] If it appeared that the jury selected for petitioners' trial would not be "impartial" in the constitutional sense because not truly representative of the community where petitioners are to be tried, then petitioners could make a valid argument that they were not accorded due process of law. To require petitioners to be tried by such a jury would not be in accord with our traditional conception of substantial fairness and justice.

The constitutional standard in jury selection will be met if prospective jurors are drawn from a fair cross section of the community.[23] The failure of the superior court

---

12. Northern Supply, Inc. v. Curtiss-Wright Corp., 397 P.2d 1013, 1017 (Alaska 1965). *See also* Galvan v. Press, 347 U.S. 522, 530, 74 S.Ct. 737, 98 L.Ed. 911, 921 (1954).

13. Slochower v. Board of Higher Educ. of New York City, 350 U.S. 551, 559, 76 S.Ct. 637, 641, 100 L.Ed. 692, 701 (1956).

14. In re Groban, 352 U.S. 330, 334, 77 S.Ct. 510, 514, 1 L.Ed.2d 376, 381–382 (1957).

15. Kinsella v. United States, 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268, 276 (1960).

16. Breithaupt v. Abram, 352 U.S. 432, 436, 77 S.Ct. 408, 410, 1 L.Ed.2d 448, 451 (1957).

17. Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183, 188 (1952).

18. Alaska Const. art. I, § 11.

19. Glasser v. United States, 315 U.S. 60, 84–85, 62 S.Ct. 457, 86 L.Ed. 680, 707 (1942).

20. *Id.* Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 85 L.Ed. 84, 86 (1940).

21. Glasser v. United States, 315 U.S. 60, 86, 62 S.Ct. 457, 472, 86 L.Ed. 680, 707 (1941).

22. Thiel v. Southern P. Co., 328 U.S. 217, 220, 66 S.Ct. 984, 90 L.Ed. 1181, 1185 (1946) ; Ballard v. United States, 329 U.S. 187, 192–193, 67 S.Ct. 261, 91 L.Ed. 181, 185 (1946).

23. Simmons v. United States, 406 F.2d 456, 462 (5th Cir. 1969).

to select jurors in accordance with the 1969 amendment to the jury selection statute means that petitioners' jury would be selected at random from a list of residents of the judicial district who voted in the preceding general election.[24] It has not been shown, nor does it appear to us, that under this method of jury selection, jurors would not be drawn from a fair cross section of the community. There is nothing to indicate, for example, that the use of voter lists is in reality a subterfuge to exclude from juries systematically and intentionally some cognizable group or class of citizens in the community.[25] On the contrary, this method of jury selection would appear to be a means of having a fair cross section of the community participate in this civic function. In 1968 Congress enacted the Jury Selection and Service Act,[26] which was designed to provide impartial jurors in federal courts to be selected at random from a fair cross section of the community where the court convenes.[27] It is significant to note that in this act Congress approved use of voter registration lists or lists of actual voters as one of the main sources of names of prospective jurors.[28]

It is true, of course, that voter lists do not include the names of all residents of the community eligible for jury service. In the Greater Anchorage Area Borough in the Third Judicial District, where the jury for this case will be formed, the official election returns show that approximately 31,000 persons voted in the 1968 general election.[29] A special census of the Greater Anchorage Area Borough taken in 1968 shows the total population of that area as approximately 62,000 persons of 19 years of age or over.[30] Presumably, the great majority of those persons were eligible to vote in the 1968 election.[31] This

24. AS 09.20.050 (prior to the amendment contained in SLA 1969, ch. 67, § 1). The names of those eligible for jury service, as taken from voter lists, or numbers corresponding to such names, are placed in a box, and a public drawing of jurors then takes place. AS 09.20.060–.070. See Crawford v. State, 408 P.2d 1002, 1004 (Alaska 1965).

25. See Chance v. United States, 322 F.2d 201, 203 (5th Cir. 1963).

26. 28 U.S.C.A. § 1861 et seq.

27. 28 U.S.C.A. §§ 1861, 1862 provides:
§ 1861. Declaration of policy
It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.
§ 1862. Discrimination prohibited
No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status.

28. 28 U.S.C.A. § 1863 provides in part:
(a) Each United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors * * *.

(b) Among other things, such plan shall—

*　　*　　*　　*　　*

(2) specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters of the political subdivisions within the district or division. See Simmons v. United States, 406 F.2d 456, 462 (5th Cir. 1969).

29. General Election Returns, November 5, 1968, at 3 (published by the Secretary of State, Juneau, Alaska).

30. Special Census of Greater Anchorage Area Borough, Alaska, October 11, 1968 (U. S. Dept. of Commerce, Bureau of the Census, Series P–28, No. 1482, March 31, 1969).

31. Under the Alaska constitution (art. V, § 1) and a statute (AS 15.05.010) a person may vote in a state election if he is a citizen of the United States, has passed his 19th birthday, has been a resident of the state for at least one year just before the election and a resident of the election district where he seeks to vote for at last 30 days just before the election, and can speak or read the English language, unless prevented by physical disability. In addition, the constitution provides in article V, section 2 that—
No person may vote who has been convicted of a felony involving moral turpi-

means that there are a large number of persons in the Anchorage area who do not appear on voting lists and thus are not selected for jury service.

But this does not mean that the voting list method of selecting jurors does not meet constitutional standards. There has been no showing that those who do not vote represent a cognizable group of persons constituting a particular economic, social, religious, racial, geographical or political group in the community, and that the effect of using voting lists amounts to a systematic and intentional exclusion of any such group from jury service. As was stated in Gorin v. United States,[32] which dealt with the use of voter registration lists:

> For a variety of reasons we reject the argument that eligible persons who do not register to vote constitute a "political" group in the community. In the first place the group does not include only the politically inert. It includes also the politically alert who may perhaps have lived for a year or more in the district but not long enough in their ward to be eligible to register to vote. In the second place, the group has no distinct or definable outlines, for in addition to persons who have just moved into a ward, it includes not only the completely apathetic but also those who might register to vote only when interested in a particular election. It includes persons of varying shades of political interest.[33]

It might be argued that the 1969 amendment to AS 09.20.050 defined what the legislature thought was necessary for a representative jury and that this amendment expanded what is required for due process in jury selection in this state. But there are no facts offering support for such an argument. It is probable that there are an unknown number of persons in the community, not appearing on voting lists, who purchase resident hunting and fishing licenses and file state income tax returns and are qualified by law for jury service. To this extent the 1969 law provides a broader base for the selection of jurors— a wider cross section of the community is represented.

This may have been the legislative purpose—to make a jury more representative of the community than where the selection of jurors was limited to voting lists. Or it may have been the intent of the legislature to distribute the civic duty and burden of jury service among a larger number of persons. Whatever the legislative purpose, there is nothing to indicate that under the voting list method of selection, a fair cross section of the community is not represented, and that there is a systematic and intentional exclusion of a particular, cognizable group of persons. No facts have been presented, and there is nothing in the legislative history of the 1969 enactment showing that a jury so selected would not meet the constitutional standard of an impartial jury. We find no case of a violation of the requirements of due process of law.

Our holding as to the equal protection and due process claim does not mean that a litigant entitled to a trial by jury would not have the right to demand that a jury be selected in accordance with the 1969 law. A determination of the method for selecting juries is a matter within the leg-

---

tude unless his civil rights have been restored. No person may vote who has been judicially determined to be of unsound mind unless the disability has been removed.

Beginning with the primary election in 1970, registration of a voter will be a prerequisite for being eligible to vote. AS 15.07.010–.200.

The 1968 Special Census of the Greater Anchorage Area Borough included mem-

bers of the Armed Forces living and stationed in the area. We do not know what percentage of the total population in the Borough consists of members of the Armed Forces, or to what extent the members of the Armed Forces are eligible to vote.

**32.** 313 F.2d 641 (1st Cir. 1963).

**33.** *Id.* at 644.

islative preogative, and the 1969 amendment to AS 09.20.050 was a lawful exercise of legislative authority. Out of a proper regard and respect for the employment of governmental power by a co-ordinate branch of our government, we would be obliged to rule, in a case where the exercise of judicial power is properly invoked, that a jury not selected in accordance with the 1969 law would be an improperly constituted jury, and that a litigant would have the right to demand that a jury be selected in accordance with the new law.

 This is not the case for vindicating that right. Prior to the 1969 amendment, AS 09.20.050 required that a list of those persons qualified by law for jury service be prepared not less often than once every two years. The same requirement, in identical language, was carried over into the 1969 amendment.[34] It is a general rule in the interpretation of statutes that provisions of an original act which are repeated in an amendment are considered as a continuation of the original act.[35] Such provisions are construed not as imposing a new requirement, but merely as continuing the original one, unless a contrary legislative intent is indicated.

 This means here that the requirement for preparing lists of prospective jurors at least once every two years does not necessitate the preparation of such a list on August 3, 1969, the effective date of the amendment, but only within two years after the last list was prepared under the original act. In the Third Judicial District, where this case is to be tried, a list of prospective jurors was last prepared on April 30, 1969. It is not required that another list, prepared in accordance with the 1969 law, be made up until April 30, 1971. If the legislature had intended that a new list be prepared under the 1969 amendment on or immediately after the effective date of that amendment, it could easily have indicated its intent in this regard. But it did not. Petitioners do not have the right to a jury selected under the arrangement before August 30, 1971.

There is a serious question as to whether the presiding judges of the superior court will be able to select jurors under the new law when they will be required to do so. On June 3, 1969, the presiding superior court judge of the Third Judicial District wrote to the Administrative Director of Courts, pointing out problems involved in following the new legislative requirement as to selection of jurors, and requesting the Administrative Director's study and direction as to implementation. The Administrative Director promptly commenced correspondence with the Director of the Division of Data Processing, Department of Administration, and the Commissioners of the Departments of Revenue and of Fish and Game, requesting assistance in meeting the requirements of the law. He pointed out to the commissioners, and correctly so, that under the law it was the function of the Department of Fish and Game to prepare a list of persons who purchased a resident hunting or fishing license, and of the Department of Revenue, to prepare a list of persons who filed a resident state income tax return for the preceding year.[36]

---

34. AS 09.20.050, both prior to and after the 1969 amendment, provided as follows:
 At such times as the presiding judge of the superior court in each judicial district may designate, but not less than once every two years, the clerk of the superior court in each judicial district shall prepare a list of the names of residents of the district who are qualified by law for jury service * * *.

35. Kirchner v. Kansas Turnpike Authority, 336 F.2d 222, 230 (10th Cir. 1964);

Tyson v. United States, 285 F.2d 19, 22 (10th Cir. 1960); 1 Sutherland, Statutory Construction § 1933 (3d ed. 1943).

36. AS 09.20.050, as amended SLA 1969, ch. 67, § 1, provides in part:
 The list shall be based on the list of persons, prepared by the Department of Revenue or the Department of Fish and Game, who purchased a resident hunting or fishing license, who filed a resident state income tax return for the preceding year * * *.

The Commissioner of Fish and Game responded, stating that the information required could not be furnished until early in 1970 because of inadequate personnel staffing. The Commissioner of Revenue informed the Administrative Director that there was no manual method that his department could use to produce the list because the volume of data was too large, and that an automated production of the listing through a computer system would take until July 1971 at the earliest. Finally, in August 1969, the Executive Director of the Legislative Affairs Agency stated that this matter had been discussed at some length at a meeting of the Legislative Council. The Executive Director's letter to the Administrative Director of Courts stated:

> I am writing to you at this time to inform you that on Saturday, August 16th, the difficulties you are faced with in obtaining the names required for jury lists under Chap. 67 SLA 1969 from the Departments of Revenue and Fish and Game were brought to the attention of the Council per your request and discussed at some length.
>
> The Council reviewed the information you had received from the Departments involved and as a result are cognizant of the problems which have arisen in regard to the implementation of the new requirements of the jury list law. After discussing this matter, however, the Council finally could conceive of no remedy which would alleviate the situation prior to the convening of the next legislative session at which time this law could be amended.
>
> One point that was specifically mentioned by the Council for consideration was the fact that even if the court system had ample funds in its budget to pay its own personnel to compile these * * * [lists], existing law would not permit the court system access to at least the Department of Revenue files. All members were in agreement that this law will be re-considered immediately upon the convening of the 1970 session.

In the Third Judicial District selection of juries under the 1969 law will not have to be made before April 30, 1971. But in the First Judicial District, where the last list of jurors was prepared under the original act in January 1969, the new law will have to be followed by January 1971.[37] We refer to this matter of implementing the 1969 law in order to advise the executive and legislative branches of our government that if the necessary lists cannot be obtained prior to January 1971 at the latest, properly constituted juries cannot be selected, with resulting judicial chaos and a severe impairment of the administration of justice.

Petitioners also ask us to review the superior court's order denying petitioners' motions to dismiss the indictment against them. The four petitioners and Stanley Andrews were indicted for kidnapping "with intent to commit rape". In addition, in a separate count of the indictment Andrews alone was charged with rape. The court dismissed the kidnapping charge against Andrews on the theory that kidnapping was merely incidental to the more serious crime of rape, and since the crime of rape had been charged, a separate count charging kidnapping was unnecessary for the accomplishment of justice. The court refused to dismiss the kidnapping charge against petitioners.

The superior court entered an order allowing the petitioners "to inspect the Grand Jury Minutes." These minutes, which are of record in the superior court, consist of handwritten notes as follows.

5/20/69

Kidnap & Rape (2 counts)
James Henry Green, Daniel Garfield
Ivy, Stanley Andrews, Jerry Strong,
Solomon Aaron Pope
 Witnesses—
 1. Alice Beverly Boston
 2. Paul Barnhardt—APD
 Vote—17 yes (2 counts)

---

37. In the Second and Fourth Judicial Districts the last lists under the old law were prepared in May 1969.

Petitioners point to the discrepancy between the minutes and the actual indictment. In the latter document petitioners are indicted for kidnapping alone. The minutes show that the grand jury voted to indict them on two charges—kidnapping and rape. It is difficult to make out the substance of petitioners' argument. They seem to be contending that the indictment should have conformed to the minutes of the grand jury and charged them with both kidnapping and rape, rather than kidnapping alone, and since it did not, the indictment should be dismissed.

It is the general policy to permit appeals only from decisions and judgments which are final.[38] Review of an interlocutory, non-final order, such as the order denying petitioners' motion to dismiss the indictment, is not a matter of right but one of sound judicial discretion. We shall not exercise our discretion and review an interlocutory order unless a litigant establishes, under Supreme Court Rules 23 and 24, that the sound policy behind the rule of finality is outweighed by the need for an early consideration of a nonappealable order.[39] This petitioners have failed to do. We decline to review the order denying petitioners' motions to dismiss the indictment.

The question as to the proper method of selecting a jury was raised by petitioners in the document entitled "Challenge to Array of Jurors." In an order entered August 9, 1969, the superior court overruled such challenge, and at the same time denied petitioners' motion to dismiss the indictment. To the extent that such order overruled petitioners' challenge to the array of jurors, the petition for review is granted and the order is affirmed. To the extent that such order denied petitioners' motion to dismiss the indictment, the petition for review is denied.

NESBETT, C. J., not participating.

38. Supreme Ct.R. 6 provides:
 An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil or criminal, except that the state shall have a right to appeal in criminal cases only to test the sufficiency of the indictment or information.

39. City of Fairbanks v. Schaible, 352 P.2d 129, 131 (Alaska 1960).