James C. TURNER, Appellant,

v.

STATE of Alaska, Appellee.

No. 1846.

Supreme Court of Alaska.

Nov. 2, 1973.

Susan Burke, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Monroe N. Clayton, Dist. Atty., Fairbanks, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

The sole question in this appeal is whether the trial court erred in refusing to give a cautionary instruction concerning the testimony of an undercover police narcotics agent.

Appellant was charged with one count of sale of a stimulant drug. At trial the state's case consisted primarily of the testimony of Jimmie Lee Patterson, an undercover police agent. Patterson testified to a transaction which took place at Fairbanks, Alaska, on the evening of June 7, 1972, culminating in the sale of a quantity of amphetamine tablets by appellant to Patterson. Appellant took the stand and denied the sale.

Patterson's testimony about his status as a police officer included the following. He arrived in Fairbanks on April 17, 1972, and was commissioned by the Fairbanks police department the following day as an undercover narcotics intelligence agent. Before coming to Alaska, Patterson had worked for a police department in the State of Washington. Further testimony as to his background police experience was cut off on objection by the defense counsel. Undercover intelligence was Patterson's sole duty. He performed twenty-one investigations during the twelve weeks he worked for the Fairbanks police department. He received a salary of $901.00 a month, then the salary for starting patrolmen, and he was paid by check twice a month. Patterson never wore a uniform but he did ride patrol in Fairbanks for one week after his undercover activity terminated. He resigned voluntarily on July 6 and was unemployed at the time of the trial in October of 1972.

At the close of the evidence defense counsel requested that the trial court give the following instruction:

"The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, or for any other purpose, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant."

The trial court refused this special instruction, but did give a general cautionary instruction.[1] The jury returned a guilty verdict.

---

1. Instruction No. 13, the general cautionary instruction, stated:

"The jury is the sole and exclusive judge of the effect and value of evidence addressed to it and of the credibility of the witnesses who have testified in the case. The character of the witnesses as shown by the evidence, should be taken into consideration for the purpose of determining their credibility, whether or not they have spoken the truth. The jury may scrutinize the manner of the witnesses while on the stand, and may consider their relation to the case, if any, and also their degree of intelligence. Witnesses are presumed to speak the truth. This presumption, however, may be repelled by the manner in which they testify; their interest in the case, if any, or their bias or prejudice, if any, against one of any of the parties; or by the character of the testimony."

In Fresneda v. State, 483 P.2d 1011 (Alaska 1971), we laid down the requirement that a special cautionary instruction of the type requested here should be given when an informer,

". . . provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication . . ." 483 P.2d at 1015.

But in *Fresneda* we excluded from that requirement the testimony of police officers. Their credibility should be judged by the standards applicable to witnesses generally. Battese v. State, 425 P.2d 606, 609 (Alaska 1967). Appellant does not dispute this. He contends, however, that Patterson's status was actually that of a paid informer rather than a bona fide police officer. In support of this contention, appellant points out that Patterson's employment lasted less than twelve weeks and that virtually his only duty was narcotics investigation.

The record does not give as detailed a picture of Patterson's status as might be possible, although both parties knew from the outset that Patterson's reliability was at issue. Counsel for appellant could have pursued the issue of Patterson's status and credibility in examining Patterson, but asked only a few questions pertaining to his gross pay and scope of duty. Appellant's counsel objected to the relevancy of Patterson's testimony on direct examination regarding his background experience. It appears that appellant did not want any further evidence placed in the record on this point.

The record supports the trial court's conclusion that Patterson was not a paid informer within the purview of *Fresneda*. Although Patterson was paid for providing evidence against drug law violators, he received his pay in the form of a regular, bi-weekly salary. His pay was not directly related to the number of violators against whom he obtained evidence. It does not appear that Patterson had any greater direct personal interest in supplying evidence against the defendant than a police officer normally has in giving evidence in any case. The record also reflects that Patterson had some police training and that he did ride patrol for one week after terminating his undercover work.

In *Fresneda,* we noted:

"The original basis for the informer instruction seems to have been the fact that an informer is normally an interested witness; he is usually either paid, or hoping for lenient treatment of his own crimes, or both." 483 P.2d, at 1014.

A review of the cases in which an informer instruction has been approved shows that the witness either was paid on a day-to-day or tip-by-tip basis, or was a drug addict himself, or both. In Fletcher v. United States, 81 U.S.App.D.C. 306, 158 F.2d 321 (1946), the witness was a drug addict who was paid $6.00 a day to turn up cases. In Smith v. State, 485 P.2d 771 (Okl.Cr.1971), cited by appellant, the witness had been promised a return to his prior military rank for effective informer work. In United States v. Masino, 275 F.2d 129 (2d Cir. 1960), also cited by appellant, the paid informer who testified was an addict himself. Patterson does not fit this category of witness. No case has been cited to us in which a court required a special cautionary instruction regarding the testimony of police officers.

Bush v. United States, 126 U.S.App.D.C. 174, 375 F.2d 602 (1967), which appellee cites and the trial court relied on, considered the problem of how to treat the testimony of police undercover agents. There the witnesses were novice or rookie undercover agents whose testimony, like that of Patterson, could have been motivated by a desire to prove themselves effective in undercover intelligence work. The court in *Bush* rejected the argument that an informer instruction should have been given regarding the testimony of the two agents and held that a general cautionary instruction was sufficient. The court's rationale was well stated at 604, 605:

"It is common experience with respect to a witness to show that he is very old or

very young, very experienced or the contrary, that his eyesight, hearing or memory is bad, or that he has ulterior motives for distorting or falsifying. These traditional safeguards may be applied to police officers as well as to other witnesses, but it is quite another thing to hold that a jury must be told by the judge that narcotics agents or police officers as a class are inherently untrustworthy. Each witness appears before a jury on his own; jurors may believe or disbelieve, accept or discount, testimony on the basis of what the witness says and does or on the basis of impeachment evidence. If the witness is a 'novice' or 'rookie' undercover agent, this may be shown for what it is worth; that he works openly in uniform or covertly in 'plain clothes' has no significance which affords any basis whatever for a rule that jurors must be warned to view him with suspicion or consider his testimony with caution." (Footnotes omitted.)

It would be anomalous to require a special cautionary instruction in the case at bar and to refuse such an instruction where the witness is a policeman who performed duties other than undercover narcotics investigation. There is no evidence in the record that Patterson was possibly motivated to testify falsely against appellant or that defense counsel was restricted in any way from testing the credibility of Patterson through cross-examination. We note that defense counsel did put the question of Patterson's paid informer status to the jury in his closing argument under the general cautionary instruction quoted above.

In these circumstances, we hold that the trial court did not err in refusing the informer instruction.

Affirmed.