**Thomas Lee COFFEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 3002.

Supreme Court of Alaska.

Sept. 29, 1978.

**516**

Craig M. Cornish, Chris J. Rigos, Robert Merle Cowan, Asst. Public Defenders, and Brian Shortell, Public Defender, Anchorage, for appellant.

James L. Hanley, Michael J. Stark, Asst. Dist. Attys., Larry R. Weeks, Dist. Atty., Richard A. Svobodny, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

BOOCHEVER, Chief Justice.

In this criminal appeal, Thomas Lee Coffey presents numerous specifications of error arising from his conviction of sale of marijuana in violation of AS 17.12.010. Issues involve warrantless electronic monitoring of private conversations, preindictment delay, Criminal Rule 45, entrapment, scope of cross-examination, the right to an informant instruction and disqualification of a judge. Our review requires that we set forth the factual and procedural aspects of this case in some detail.

## I. STATEMENT OF FACTS

A. The Factual Setting.

On November 26, 1974, Richard Martini, an informant, and Charles Hagan, a special commissioned Alaska State Trooper acting undercover, went to the residence of Thomas Coffey, where Hagan allegedly purchased one pound of marijuana for $250.00. Also present at the transaction were Jana Chisum, Coffey's companion, and, according to Coffey and Chisum, a fifth individual, identified only as "Bear."[1] The transaction was electronically monitored by Alaska State Trooper Roy Holland and Homer Police Chief Michael Daugherty. They listened to the conversation that ensued within the Coffey residence by means of a transmitter concealed on the person of Trooper Hagan and a receiver located in their vehicle, parked near the residence. The equipment also contemporaneously recorded the transmission.

The "buy" was prearranged by Daugherty, Holland, Martini and Hagan. The primary dispute at trial concerned whether Coffey or Martini did the actual selling to Trooper Hagan.

Hagan testified that he purchased the marijuana from Coffey. He stated that Coffey brought a white plastic garbage bag[2] containing approximately five pounds of marijuana[3] into the residence, that he paid Coffey $250.00 for one pound and that Coffey handed him the pound in return. He further stated that Coffey said he always had good marijuana and that, if Hagan purchased two pounds a week, the price would possibly drop to $170.00 a pound.

During cross-examination, Hagan stated that he did not know where Coffey got the marijuana. Hagan did testify, however, that he went to Homer to "make a case" on Coffey. The court refused to allow Coffey

---

1. Trooper Hagan testified that only four people (Coffey, Chisum, Martini and himself) were present. Trooper Holland testified that he overheard four voices.

2. He quoted Coffey as stating, "I've got green for summer, brown for fall, and white for winter." Coffey denied making the statement.

3. Coffey referred to three pounds when testifying.

to attempt to show bias by Hagan as a result of an assault charge in Montana.

Although the quality of the monitoring equipment was poor,[4] Chief Daugherty testified that he overheard Coffey and Hagan negotiating a price and Coffey stating in effect that he was the "number one man" for marijuana in that area and that a future price may be cheaper.[5] Daugherty also stated that he did not know how the marijuana got to Coffey's residence, but that he and Martini had an arrangement prior to their discussing the presence of marijuana at the Coffey residence.

Informant Martini was called at a pretrial evidentiary hearing, but he invoked his fifth amendment privilege and refused to answer questions concerning the transaction. He did not testify at trial, although the defense attempted unsuccessfully to subpoena him.[6]

Coffey testified that the marijuana belonged to Martini, who was storing it and other of his effects at Coffey's residence.[7]

He stated that the sale to Hagan was transacted by Martini, who received the purchase money from Hagan. He stated that he brought the garbage bag of marijuana into the house at Martini's request.

Jana Chisum corroborated Martini's ownership of the marijuana and stated that the sale was from Martini to Hagan.

B.  The Procedural History.

Coffey was indicted in Anchorage on March 20, 1975. When Coffey appeared in Anchorage for arraignment of March 28, 1975, he was informed that a prosecution motion for change of venue to Kenai had already been granted without service on the defendant. Judge Buckalew set aside the venue order which had been signed by Judge Moody, and Coffey was then arraigned. He pled not guilty.

Coffey then requested a nine-week postponement of the omnibus hearing.[8] The delay was granted.

---

**4.** Daugherty testified that, of the twenty minutes of tape, only one or two minutes were audible.

**5.** Coffey attributed the promise of a lower price to Martini and denied stating that he was "the man to see" in Homer.

**6.** The court denied a defense motion under Criminal Rule 16 to produce Martini but granted a temporary restraining order. At trial, the following stipulation was read to the jury:

> It is agreed that the informant, Martini, exercised his Fifth Amendment privilege to not testify in a previous court hearing in this case. There was no indication as to why the right was being exercised and the right may be exercised without proof. It would not be proper for the prosecutor to call as a witness a person who has exercised his privilege against self-incrimination.

**7.** Coffey stated that Martini owed him $500.00, and that Martini planned to sell the marijuana in order to repay Coffey. Coffey stated that Martini eventually paid him with funds acquired through a loan from Tom Gerstner. Gerstner corroborated the loan.

**8.** Coffey's counsel stated:

> MR. DRATHMAN: Your Honor, in that we would ask that the omnibus hearing be set off for approximately 9 weeks for the following reasons, Your Honor: Mr. Coffey hasn't been employed up until the end of last

month, he had a back injury and he will be receiving disability checks for that, he's recovered from the back injury, he's married and he has a child, he's been informed by Mr. Ed Orbuck (ph), Jr., who's the dispatcher for the construction general laborers 942 in Fairbanks, that he has a job waiting for him right now on the pipeline and he desperately needs this money to support both himself and his wife and child who are here in court and I think probably this case is going to take a great deal of investigating and trying to find out where everything is and what's going on down in Kenai. His wife is going to remain in Anchorage and for that reason we're prepared to waive our right to a speedy trial today and ask that the court set the omnibus hearing at approximately 9 weeks.

The following exchange occurred:

> MR. DRATHMAN: [W]hat I'm asking for is 9 weeks so that he can go back to work so that he can support his wife and child, that's all I'm asking. We're willing to waive the 4 months rule.
> THE COURT: Mr. Coffey, are you willing to enter a waiver of speedy trial in this matter?
> MR. COFFEY: Yes, sir, I am.
> THE COURT: And I understand that that's a blanket waiver so that I don't have to worry about it.
> MR. DRATHMAN: Yes, sir, that's correct.
> THE COURT: All right. A blanket waiver has been entered.

On April 21, 1975, Judge Buckalew vacated his order which retained venue in Anchorage, stating for the record that venue was properly in Kenai *ab initio*. At an appearance on a pretrial motion before Judge Kalamarides on April 23, the question of Criminal Rule 45 arose. Counsel for Coffey stated:

MR. DRATHMAN: Your Honor, he indefinitely waived the 4 months rule before Judge Buckalew.

By order of June 25, 1975, Judge Kalamarides set venue in Kenai.

On August 13, 1975, Coffey moved to dismiss the indictment due to violation of Criminal Rule 45 and preindictment delay. On August 15, Judge Hanson ruled that venue was properly in Kenai in the first instance. All remaining proceedings were before Judge Hanson.

On August 29, a hearing was held on Coffey's motion to dismiss the indictment for violation of Criminal Rule 45. His counsel stated:

MR. COWAN: [T]he only reason that he waived the Rule 45 rights at that time in Anchorage was because of the invalid retention of venue in the Anchorage court system. I've spoken to the defendant and he has advised me that he would never have waived Rule 45 if it had not been for the fact that the court established venue in Anchorage. It is his contention that if venue had properly been placed in Kenai, as it now is and he was aware of that, he would not have waived Rule 45.

Coffey also maintained that, since venue did not properly lie in Anchorage, the proceedings there, including waiver of Criminal Rule 45, were nullities. The court ruled that Coffey could withdraw his waiver and that time would run again from August 29, 1975; although the time would be tolled during the period between the Anchorage waiver and that date. Coffey agreed but

maintained that the waiver was a nullity. The motion to dismiss was denied.

On October 1, 1975, Coffey's motion to dismiss for preindictment delay was denied. On October 8, 1975, Coffey moved to dismiss the indictment on a theory of entrapment. An evidentiary hearing was held on this issue, and the motion was denied in a written decision on January 22, 1976.

On April 5, 1976, the day set for trial, Coffey moved to dismiss for violation of Criminal Rule 45 and his constitutional right to a speedy trial. A motion was also filed to disqualify Judge Hanson for cause pursuant to AS 22.20.020. All three motions were denied. The motion for disqualification was not heard by another judge, and trial by jury began that day.

Coffey's objections to any testimony derived from the monitored conversations were overruled. The tape was later placed in evidence by the defense. A request for an informant instruction pertaining to Hagan's testimony was denied.

Coffey was convicted of one count of sale of marijuana in violation of AS 17.12.010. He was sentenced to three years with all but ninety days suspended. This appeal followed.

## II. PARTICIPANT MONITORING

■ In *State v. Glass*, 583 P.2d 872 (Alaska, 1978), we held that warrantless monitoring of a private conversation by a participant to that conversation violates art. I, §§ 14 and 22 of the Alaska Constitution.[9] For reasons set forth in our decision in *Glass*, we reverse Coffey's conviction on the basis of the admission, over objection, of testimony derived from monitoring devices.[10] In the event there is a retrial of this case, the following issues may arise, and for that reason, will be discussed: preindictment delay; Criminal Rule 45; entrapment; cross-examination of Trooper

---

**9.** *See also, State v. Thornton*, 584 P.2d 1105 (Alaska, 1978); *Aldridge v. State*, 583 P.2d 886 (Alaska, 1978).

**10.** The court acknowledges counsels' comprehensive briefing of this issue in the instant case.

Hagan; informant instruction and disquali-fication of Judge Hanson.[11]

## III. PREINDICTMENT DELAY

Coffey allegedly sold the marijuana to Hagan on November 26, 1974. The indict-ment was returned on March 20, 1975. Nearly four months elapsed between the incident and the formal charge.

■ A claim of preaccusation delay must sound in terms of deprivation of due process of law.[12]

■ Two factors are to be considered un-der both federal and state law: (1) the reasonableness of the delay; and (2) the resulting harm to the accused.[13] The Unit-ed States Court of Appeals for the District of Columbia Circuit has stated:

> [N]arcotics charges must be dismissed where the delay between the undercover agent's detection of the crime and notice to the accused of criminal charges is un-reasonable and prejudicial to him.[14]

The court dismissed an indictment due to a preindictment delay of seven months during which time a witness was lost and the un-dercover agent, who had sworn out fifty-one warrants, could testify only from notes.[15] In another case, the court sus-tained an indictment where similar claims were raised, but the delay was only three and one-half months.[16]

In *Marks v. State*, 496 P.2d 66, 68–69 (Alaska 1972), we reversed a conviction for a preindictment delay of eight months, which delay the state did not attempt to justify.[17] In *McKay v. State*, 489 P.2d 145, 151 (Alaska 1971), however, we upheld an indictment after a delay of approximately two and one-half months, stating:

> Some delay between offense and formal charge is clearly justified in cases involv-ing drug undercover agents, and appel-lant here has not shown that the delay in his case was oppressive or unreasonable, or that he was prejudiced either in the preparation of his defense or because of an unreliable identification.

■ In *Yarbor v. State*, 546 P.2d 564 (Alaska 1976), we rejected a due process claim arising from a nine-month delay in a prosecution for lewd and lascivious acts to-ward a child, holding that the defendant had failed to show the absence of a valid

---

**11.** Coffey also challenges the one-year dura-tional residency requirement for service on the grand jury which indicted him. This require-ment was sustained in *Hampton v. State*, 569 P.2d 138, 148–49 (Alaska 1977).

In light of our disposition of this appeal, we do not address a specification of error relating to a question presented to the court by the jury during deliberations.

**12.** United States Constitution, amendment XIV; Alaska Constitution, art. I, § 7. The United States Constitution, sixth amendment, does not afford speedy trial protection until the commencement of formal proceedings. *United States v. Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 30 L.Ed.2d 468, 478–79 (1971). Similarly, the Alaska Constitutional right to speedy trial, embodied in art. I, § 11, does not attach prior to formal accusation. *Yarbor v. State*, 546 P.2d 564, 567 (Alaska 1976).

**13.** *Robinson v. United States*, 148 U.S.App.D.C. 58, 62, 459 F.2d 847, 851 (1972); *Marks v. State*, 496 P.2d 66, 68 (Alaska 1972).

**14.** *Ross v. United States*, 121 U.S.App.D.C. 233, 349 F.2d 210, 236 (1965).

**15.** *Id.* The court also found reason to question the agent's identification of the defendant, whom he had seen for only ten minutes. *See also, Woody v. United States*, 125 U.S.App.D.C. 192, 370 F.2d 214 (1966) (questionable identifi-cation after delay).

**16.** *Robinson v. United States, supra* Note 13, 148 U.S.App.D.C. at 64, 459 F.2d at 853. *See also, United States v. Brooks*, 422 F.2d 367, 368–69 (9th Cir. 1970) (upholding a delay of four months); *Jordan v. United States*, 416 F.2d 338, 343–44 (9th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 930, 25 L.Ed.2d 101 (1970) (upholding a delay of three months where only prejudice shown was that the de-fendants could not recall details of the days in the distant past; no special circumstances); *Whitted v. United States*, 411 F.2d 107, 109 (9th Cir. 1969), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2204, 26 L.Ed.2d 565 (1970) (upholding a delay of almost six months); *Wilson v. United States*, 409 F.2d 184, 186–87 (9th Cir. 1969), *cert. denied*, 395 U.S. 983, 89 S.Ct. 2146, 23 L.Ed.2d 771 (1969) (upholding a delay of almost seven months).

**17.** The state confessed error, but the court in-dependently reviewed the proceedings. 496 P.2d at 67–69.

reason for the delay and the fact of prejudice.[18] Thus, the defendant bears the burden of proof on this issue.[19]

In the instant case, we do not believe that the trial court erred in finding that Coffey has not met his burden of showing that the delay was unreasonable and that he was prejudiced thereby.[20] Coffey does not allege that his identification as the seller was tainted by the delay. Instead, he argues that the absence of Martini and "Bear" deprived him of evidence essential to his defense. Martini, however, did not disappear until after the pretrial evidentiary hearing, and the testimony was conflicting as to whether "Bear" was present at the sale. Moreover, no nexus is shown between the delay and Martini's invocation of his fifth amendment privilege.

With respect to the reasonableness of the delay, the state asserts that the delay was due to the undercover work of Hagan. Hagan testified in a trial two weeks before his commission as an Alaska State Trooper on February 15, 1975. Thus, Hagan "surfaced" approximately six weeks prior to the indictment. We do not find, on the facts of this case, that the delay was unreasonable. Due process was not offended, and the superior court properly denied Coffey's motions to dismiss.

## IV. CRIMINAL RULE 45

Coffey alleges that he was denied his right to a speedy trial as embodied in Criminal Rule 45, which specifies, in part:[21]

(b) *Speedy Trial Time Limits.* A defendant charged with either a felony or a misdemeanor shall be tried within 120 days from the time set forth in section (c).

(c) *When Time Commences to Run.* The time for trial shall begin running, without demand by the defendant, as follows:

(1) From the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first.

Our review of the record indicates that Criminal Rule 45 was violated only if the period between June 25, 1975, when venue was clearly set in Kenai, and August 13, 1975, when Coffey moved to dismiss for violation of Criminal Rule 45, is chargeable to the state. Coffey argues that his waiver of Criminal Rule 45 was conditional on the continuance of venue in Anchorage and that, once venue was set in Kenai, the waiver was automatically revoked, thereby charging the time against the state.

The record does not show that Coffey waived Criminal Rule 45 on the condition that venue would "remain" in Anchorage. Coffey requested a nine-week delay solely for purposes of employment. The condition, if it existed at the time of waiver, was subjective, inasmuch as it was not brought to the attention of the court.

18. In two other decisions, we have upheld convictions despite preaccusation delay. In *P.H. v. State*, 504 P.2d 837, 847 (Alaska 1972), a preindictment delay of seven and one-half months was held to be insufficient to establish a denial of due process because of an inadequate record. In *Tarnef v. State*, 512 P.2d 923, 931–32 (Alaska 1973), a delay of approximately one year before indictment was upheld, since the state was without sufficient evidence to go forward on a charge of arson until two months prior to indictment. *See also, Paul v. State*, 560 P.2d 754, 756–57 (Alaska 1977), where a delay of six months from an alleged probation violation until a probation revocation hearing was allowed due to a failure to show sufficient prejudice.

19. That the ultimate burden is on the defendant, however, does not mean that the state is relieved of the burden of coming forward with reasons for the delay, matters normally within the exclusive knowledge of the state. Rather, the defendant must show that the reasons so advanced do not justify the delay.

20. Trial was well within the statute of limitations, which is the ultimate guarantee against stale criminal charges. *Marks v. State*, 496 P.2d 66, 68 (Alaska 1972); *see also, United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627, 632 (1966). The general five-year statute of limitations is applicable here. AS 12.10.010.

21. Coffey has not alleged on appeal a speedy trial deprivation outside of Criminal Rule 45.

Coffey's argument is unpersuasive. Once venue was set in Kenai by the order of June 25, 1975, Coffey could have moved to rescind his waiver. His argument that affirmative steps to protect the right to a speedy trial are not required [22] is inapplicable to post-waiver situations, where affirmative steps to withdraw a waiver may reasonably be required.[23]

## V. ENTRAPMENT

Coffey's claim of entrapment is grounded on the theory enunciated in *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971), *cert. denied,* 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973). In *Bueno*, the court reversed a conviction despite evidence that the defendant was "ready, willing and able to sell the heroin, was not reluctant, did not have to be persuaded, and offered to sell more . . .." *Id.* at 904. The court held that, where a defendant testifies that a government informant supplied the illegal drugs which were then sold to a second government agent and the informant does not testify to the contrary, entrapment is established as a matter of law. *Id.* at 906. The court stated:

> The story takes on the element of the government buying heroin from itself, through an intermediary, the defendant and then charging him with the crime. *Id.* at 905.[24]

The United States Supreme Court has overruled the *Bueno* theory where predisposition to commit the offense is established. *Hampton v. United States*, 425 U.S. 484, 488–89, 96 S.Ct. 1646, 48 L.Ed.2d 113, 118 (1976).[25]

In Alaska, where the objective theory of entrapment is followed, predisposition in itself does not preclude the defense.[26] Further, under Alaska law, the burden of proof for entrapment is on the defendant by a preponderance of the evidence, and the question is determined by the judge.[27] We have previously noted that a *Bueno*-type defense would "appear" to be compatible with this state's law on entrap-

---

**22.** *See Peterson v. State*, 562 P.2d 1350 (Alaska 1977); *Peterkin v. State*, 543 P.2d 418, 422 (Alaska 1975).

**23.** We also reject Coffey's argument that because venue was never properly in Anchorage, his waiver there was a nullity. Even though it is now undisputed the venue was properly in Kenai *ab initio*, this fact did not deprive the Anchorage court of *jurisdiction* to accept the waiver. *See Leege v. Strand*, 384 P.2d 665, 668 (Alaska 1963).

**24.** The case was followed in *United States v. Mosley*, 496 F.2d 1012, 1015 (5th Cir. 1974):
> [W]hen a defendant testified that he obtained the contraband from a government undercover agent, the Government must produce the undercover agent . . . to take the case to the jury.

The court later retreated somewhat from its position in *Bueno*, upholding the sending of a case to the jury despite the fact that the informant had died, since the government had presented sufficient rebuttal evidence for a jury question. *United States v. Soto*, 504 F.2d 557, 559 (5th Cir. 1974).

**25.** The *Bueno* analysis had previously been rejected in other courts. In *United States v. Jett*, 491 F.2d 1078, 1080–81 (1st Cir. 1974), the informant supplied the drugs to the defendant, if at all, unbeknownst to the government. It

was noted that the jury could disbelieve defendant's testimony. *See Masciale v. United States*, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859, 861 (1958) (jury may disbelieve uncontradicted defendant testimony on entrapment). *See also, United States v. Gurule*, 522 F.2d 20, 24 (10th Cir. 1975) (jury entitled to disbelieve defendant's uncorroborated testimony that he was supplied narcotics by the informant).

**26.** In *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978), we held that entrapment occurs where there are:
> unreasonable or unconscionable efforts on the part of the police to induce one to commit a crime so that he may be arrested and prosecuted for the offense.

Generally speaking, police conduct will be considered unreasonable or unconscionable where the inducements go beyond:
> those measures which, objectively considered, are likely to provoke to the commission of crime only those persons, and not others, who are ready and willing to commit a criminal offense.

*Grossman v. State*, 457 P.2d 226, 229 (Alaska 1969).

**27.** *Batson v. State*, 568 P.2d 973, 976–78 (Alaska 1977).

ment. *Evans v. State*, 550 P.2d 830, 845 (Alaska 1976).[28]

In the present case, a pretrial hearing was held and testimony was presented by Coffey and his companion that the marijuana belonged to Martini, who exercised his fifth amendment right not to testify. The state did not present contrary evidence regarding ownership. Hagan and Daugherty both testified that they did not know the source of the drug. It is unclear when Martini became a state informant, but it was clearly prior to the "buy."

The trial court's decision was as follows: The Defendant's testimony in support of his motion was simply not believable. The testimony of the officers, particularly that of Chief Daugherty concerning the Defendant's statements heard over the police radio while monitoring the conversation in the Defendant's residence was totally credible. From that testimony it is clear that Mr. Coffey was a person engaged in an habitual course of unlawful conduct for gain or profit.

Whether or not Martini, the informant, was a police agent in any sense when he allegedly supplied Mr. Coffey with some marijuana is not clear. It is clear that he did not supply the Defendant with all the marijuana present at the time of the subject transaction. Both officers indicated that they did not know if Mr. Martini had supplied any marijuana to the Defendant or not or if he was working with them at the time the Defendant claims the receipt of the drug from Mr. Martini; however, there is testimony that Mr. Martini may have been working with an Investigator Holland before either of the testifying officers became involved.

Since Mr. Coffey was apparently in the business of selling marijuana before any police involvement in his affairs and, assuming that a police agent did supply him with some marijuana, it was at best simply a part of his stock. I do not find a basis for dismissal. Motion Denied.

We decline at this time to rule upon the correctness of the trial court's decision. It is clear from the court's opinion that heavy reliance was placed on the testimony of Chief Daugherty, who listened to the transaction by means of a monitoring device without benefit of a warrant. We have determined that evidence so acquired is inadmissible in Alaska courts.[29] Moreover, because we conclude that a close question is presented on the facts of this case, we believe that a ruling should await a decision by a trial court that is not tainted by the presence of inadmissible evidence.[30]

## VI. CROSS–EXAMINATION

The right of cross-examination is guaranteed by the confrontation clauses of the United States and Alaska Constitutions.[31] Coffey alleges that he was denied his right to establish bias on the part of Trooper Hagan. Coffey argues that, due to an assault charge in Montana, Hagan sought to curry favor with the Alaska State Troopers in order to avoid prosecution in Montana. Hagan was convicted of the assault in Montana, but the conviction was set aside since Hagan was convicted in his absence. Coffey proffered that phone calls from Alaska authorities aided in a dismissal of the charge, and that the dismissal was without prejudice so it was possible for the charges to be reinstituted.

28. *Bueno* has been adopted in other jurisdictions adhering to the objective theory. *See* *State v. Overmann*, 220 N.W.2d 914 (Iowa 1974); *Lynn v. State*, 505 P.2d 1337 (Okl.Cr. App.1973); *State v. Sainz*, 84 N.M. 259, 501 P.2d 1247 (1972); *State v. McKinney*, 108 Ariz. 436, 501 P.2d 378 (1972).

29. *State v. Glass*, 583 P.2d 872 (Alaska, 1978). Criminal Rule 26(g) states:

*Evidence Illegally Obtained.* Evidence illegally obtained shall not be used for any purpose including the impeachment of a witness.

30. Should the informant again refuse to testify about pertinent facts, this factor should be carefully considered by the trial court and given substantial weight.

31. United States Constitution, amendment VI; Alaska Constitution, art. I, § 11. *See Evans v. State*, 550 P.2d 830, 846 (Alaska 1976); *McBride v. State*, 368 P.2d 925, 926 (Alaska 1962).

It is clear that Hagan was under investigation in regard to his aspiration to become a Trooper at the time of the alleged sale. Hagan indicated that he was having difficulty becoming a Trooper due to the conviction, until it was set aside, but that, by December of 1974, he was among the top ten for appointment. He also stated that his undercover work was helpful in his success in joining the Troopers, but that making a case on Coffey was not crucial.

The trial judge permitted none of the evidence about the Montana incident to go to the jury, noting that it was remote and that the probative value was outweighed by the prejudicial effect. The following chronology may clarify the scenario:

| Event | Date |
| --- | --- |
| Assault | 3/19/74 |
| Conviction | 5/6/74 |
| Conviction set side charges dismissed Hagan under investigation to become Trooper | 10/21/74 |
| Alleged marijuana sale | 11/26/74 |
| Hagan becomes probationary Trooper | 2/15/75 |
| Indictment of Coffey returned (Hagan testified before grand jury) | 3/20/75 |
| Hagan's Trooper probationary period terminated | 2/15/76 |
| Trial | 4/5/76 |

Coffey places heavy reliance on a series of cases beginning with *Whitton v. State*, 479 P.2d 302 (Alaska 1970), to buttress his claim that he was denied effective cross-examination. In *Whitton*, a conviction was reversed where cross-examination as to bias was curtailed. There, a witness arguably was biased against the defendant in order to secure immunity from criminal acts for which he could have been charged. *Id.* at 318. Coffey argues that Hagan was in a similar position in that the Montana charge could have been resurrected.

In cases after *Whitton*, we have emphasized the importance of cross-examination. In *R.L.R. v. State*, 487 P.2d 27 (Alaska 1971), restrictions on cross-examination of a paid informant as to the frequency and nature of his employment resulted in reversal. *Id.* at 43–44. Hagan, however, was a salaried special Trooper, not a paid informant whose services were contingent upon getting "busts." In *Hutchings v. State*, 518 P.2d 767 (Alaska 1974), a conviction was again reversed where a discharged police officer may have slanted testimony to secure reinstatement, and cross-examination in this area was unduly restricted. *Id.* at 769–70. Finally, in *Evans v. State*, 550 P.2d 830 (Alaska 1976), a special officer of the Alaska Troopers (who had a criminal record, was a narcotics addict and may have supplied the drugs in question in that case) was the critical witness for the state. *Id.* at 835. We held that restriction of cross-examination regarding the prior convictions and the possibility of future criminal charges was reversible error. *Id.* at 839. We stated: "[T]he mere possibility of future criminal charges is sufficient to open the area." *Id.*

■ We do not find in the present case the type of limitation on cross-examination that was disapproved in the foregoing cases. Charges against Hagan were dismissed in Montana over a month before the alleged sale, and he was a full Trooper by the time of trial. More than seventeen months elapsed between the dismissal of charges and the commencement of trial.

In short, we believe that the basis for the alleged bias is remote at best, and we find no error in the trial court's exclusion of this evidence.[32]

32. We note the extensive cross-examination of Hagan permitted by the trial court, as summarized by the state, included:

[H]is willingness to impersonate a transvestite as part of his undercover activities, the number of polygraph examinations he had taken prior to becoming an Alaska State Trooper, his simulation of drug usage during his undercover activity, whether any complaints had been made against him during his undercover activity in Montana, his misidentification of another defendant in a drug sale case, his training in the use of firearms, . . .

## VII. INFORMANT INSTRUCTION

Coffey contends that the court erred in denying an informant instruction with respect to Trooper Hagan's testimony.[33] He argues that Hagan should be viewed as an informant because he was paid and expected personal advantage for his undercover work. Coffey contends that Hagan was motivated by "overwhelming personal interest in successfully arranging undercover drug sales so that he could clear his existing criminal conviction record from the State of Montana and thus become a full Alaska State Trooper."

The essence of Coffey's argument is that Hagan was a *de facto* informant with similar motives to fabricate as one who has a financial or other personal interest in "making a case."

This court first established the parameters for adoption of the informant instruction in *Fresneda v. State,* 483 P.2d 1011, 1015–16 (Alaska 1971). There, it was held that the instruction should be given where an informer testifies for pay, immunity or personal advantage or vindication. A cautionary note was struck, however:

> It would be a sad commentary on our society to say that when police officers and public-spirited citizens are called to testify in court under oath in criminal cases, their testimony must be viewed with suspicion. This would be tantamount to saying all such witnesses are inherently untrustworthy. At a time when the fullest participation by all segments of society is necessary for the survival of our system of government, we would be paradoxically condemning such participation. This we decline to do. *Id.* at 1016. (footnotes omitted)

No error was found in denying the instruction on the facts of that case,[34] since the witness was not a professional informer, was not paid and had no apparent motive to lie.

In *Turner v. State,* 515 P.2d 384, 386 (Alaska 1973), a claim similar to Coffey's was made. A special undercover officer, whose sole duty was drug investigation, and who received regular bi-weekly salary, was held not to be within the purview of *Fresneda.* We specifically noted that the credibility of police officers should be judged by the standards applicable to witnesses generally. *Id.* 515 P.2d at 386.[35]

In the instant case, Hagan received monthly cash payments. On this aspect, we find *Turner* to be controlling. Hagan's alleged motive to fabricate has been discussed thoroughly under Part VI of this opinion, *supra.* We find the factual basis for the allegation to be too remote to implicate the dangers against which the informant instruction was designed to protect.

## VIII. DISQUALIFICATION OF JUDGE HANSON

On the morning of trial, Coffey moved to disqualify Judge Hanson pursuant to AS 22.20.020(a)(6), which provides:

> *Disqualification of judicial officer for cause.* (a) A judicial officer may not act as such in a court of which he is a member in an action in which
>
> .    .    .    .    .
>
> (6) the judicial officer feels that, for any reason, he cannot give a fair and impartial decision.

The motion was based primarily on an allegation of bias against Coffey as manifested

---

**33.** Coffey requested the following instruction:

The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant.

**34.** We also discussed the informer instruction in *Evans v. State,* 550 P.2d 830, 842–43 (Alaska

1976), but no error was found since the point was not properly raised.

**35.** *See also, Battese v. State,* 425 P.2d 606, 609 (Alaska 1967). Here, the jury was instructed as follows:

In determining the credit to be given any witness you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

in the court's written denial of Coffey's motion to dismiss on the ground of entrapment. In that decision, entered on January 22, 1976, Judge Hanson stated that he disbelieved Coffey's testimony and concluded that Coffey was "in the business of selling marijuana."[36]

In denying the motion to disqualify, Judge Hanson stated:

THE COURT: I frankly feel that I could not try the matter as a court tried case and I would disqualify myself in that event, will not do so in the case of a jury trial however.[37]

Coffey then maintained that the decision on disqualification could not be made solely by Judge Hanson, citing AS 22.20.020(c), which provides in part:

If a judicial officer denies his disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts or, if none, by the other members of the supreme court. The hearing may be ex parte and without notice to the parties or judge.

Referring to the lateness of the motion to disqualify, Judge Hanson decided to proceed with the trial.[38]

Coffee contends that the trial court erred in two respects: (1) in denying the motion to disqualify; and (2) in failing to request that another judge rule on the motion. We reject both arguments.

The fact that Judge Hanson, as trier of fact in a pretrial motion, found Coffey's testimony "not believable" does not in itself preclude his presiding at the subsequent trial. Coffey has not cited to one instance of an allegedly biased ruling, and we have found none in our independent review of the record. We believe that Judge Hanson carefully considered his role as presiding judge in a trial where a jury was trier of fact, and we find no basis upon which to overturn his decision that he could be fair and impartial.[39]

With respect to the failure of another judge to rule on the disqualification motion, we believe that, under AS 22.20.-020(c), it was incumbent on Coffey to request the chief justice, as presiding judge of the next higher court, to appoint another judge to determine the question. No such request was made. That Coffey was faced with imminent commencement of trial does not justify his failure to pursue his rights

---

**36.** The full text of the entrapment decision is set forth in Part V of this opinion, *supra.*

**37.** The following exchange occurred between Coffey's counsel and the court:

THE COURT: I'm not biased in any—I don't dislike Mr. Coffey, I don't think Mr. Coffey is a bad man. I feel based on the evide—I would have a very difficult time sorting out the bias, I mean, the conclusion which I drew and state it clearly so the record would be clear on my motion to deny—to deny your suppression motion. I don't think, if I were the trier of fact, that I would be comfortable trying to sort that conclusion out. I don't have any ill feeling toward this defendant that it would make it difficult for me to rule on evidentiary matters, none whatsoever.
MR. COWAN: Your Honor, you state that you feel that there would be no bias in your evidentiary rulings towards the defendant because of your prior disposition and the fact that you have stated in . . . . .
THE COURT: That's correct.
MR. COWAN: . . . your decision you thought that he was dealing in drugs.

THE COURT: That's correct. And I'm not mad at Mr. Coffey. Simply if the issue is guilt or innocence, I don't think I should be having to—I should decide that based on the ruling that I made on the suppression motion.

**38.** Coffey had notice of the entrapment decision since January 22, 1976, and the motion to disqualify was not filed until April 5, 1976.

**39.** In so concluding, however, we reject the state's argument that the disqualification standards under AS 22.20.020(a)(6) are wholly subjective and therefore not amenable to appellate review. Clearly, review is contemplated on a challenge for cause grounded in bias. Our duty to assure that judicial proceedings comply with due process mandates appellate scrutiny of allegations of bias. *See* Alaska Constitution, art. I, § 7; *Green v. State,* 462 P.2d 994, 996–97 (Alaska 1969). *See also, In Matter of Robson,* 575 P.2d 771 (Alaska 1978), where we specifically noted that adjudicative proceedings must have the appearance, as well as the fact, of impartiality. *Id.* at 774.

under AS 22.20.020(c) since the entrapment ruling, which provided the basis for the allegation of bias, was entered on January 22, 1976, nearly three months before trial.

We do believe, however, that Judge Hanson should not preside in the event of a retrial of this case. Factual issues will be likely to arise in the pretrial stage, and Judge Hanson has stated candidly that he would not be "comfortable" ruling on issues of fact in light of his entrapment decision. Thus, the case should be assigned to another judge.

### IX. CONCLUSION

Coffey's conviction is reversed, and the case is remanded for a new trial in accordance with this opinion.

REVERSED AND REMANDED.

BURKE, Justice, dissenting in part.

For the reasons expressed in my dissenting opinion in *State v. Glass,* 583 P.2d 872 (Alaska 1978), I disagree with the majority's conclusion that the electronic monitoring and recording of the transaction in this case violated the defendant's rights under art. I, §§ 14 and 22 of the Constitution of Alaska. Thus, I would hold that the superior court did not err in admitting the evidence so derived and affirm Coffey's conviction.[1]

---

1. On all other issues, I concur.